Troutman Sanders LLP
875 Third Avenue
New York, New York 10022

troutman.com



**Aurora Cassirer**
D 212.704.6249
aurora.cassirer@troutman.com

August 22, 2019

<u>**VIA ECF AND FEDEX**</u>

Honorable Shelley C. Chapman
United States Bankruptcy Judge
Southern District of New York
One Bowling Green
New York, NY 10004-1408

  Re: The D&M Capital Group, LLC v. Essex Global Trading, LLC, Adv. Proc. No. 19-01300 (SCC)

Dear Judge Chapman:

  On behalf of the debtor and plaintiff, The D&M Capital Group, LLC ("<u>Plaintiff</u>"), in the referenced adversary proceeding, we write to inform the Court of certain developments since the status conference held before the Court on August 13, 2019 (the "<u>Status Conference</u>") and, in our view, the failure of Defendants Essex Global Trading LLC ("<u>Essex</u>") and Aleks Paul ("<u>Paul</u>") to comply fully with Your Honor's so-ordered record of the Status Conference.

  When the parties were last before Your Honor at the Status Conference, Defendants divulged—for the first time—that Defendants transferred all the estate's gems and jewelry that Defendants were holding on consignment out of the United States to Russia ***after Plaintiff commenced its bankruptcy case and made repeated demands for Defendants to return the goods.*** See Status Conf. Tr. 30:10 – 34:16; 39:10-21.[1] More than that, Paul testified that these transfers of estate property were made to satisfy his substantial, personal debts:

    The Court: Did you sell those to somebody?
    Mr. Paul:  No, I owe people almost $17-18 million.
    The Court: You gave people those stones because you owed them money?

                 ****

---

[1] A copy of the transcript from the Status Conference is attached as <u>Exhibit A</u>.



> Mr. Paul: I borrowed almost $17-18 million from people to give to D&M Capital and other peoples. . . .

*Id.* 41:10 – 42:13. Accordingly, the Court required that the goods allegedly with Essex's affiliate in Moscow be returned to the United States "with all deliberate speed." *Id.* at 37:11–13.

While Plaintiff appreciates that the emerald earrings and diamond cross pendant necklace, which the parties refer to as Item Nos. JE0104 and JP0105 (together, the "<u>Restrained Stones</u>"),[2] were placed in a safe deposit box at Chase Bank in New York, New York, allegedly under the exclusive control of Essex's counsel, Sam P. Israel P.C.,[3] the unusual circumstances surrounding how the Restrained Stones came back into the United States (allegedly from Russia) and the failure of Essex's counsel to procure insurance for the safe deposit box raise serious concerns regarding the security of the Restrained Stones and the veracity of the representations made regarding the other "Precious Stones."[4]

Moreover, despite being served with expedited discovery demands,[5] Defendants have failed to follow the Court's directive and cooperate with Plaintiff in scheduling depositions, which Plaintiff noticed for September 9th and 11th. Instead, Defendants' counsel stated that his client was on vacation, and he was unable to get back to us.

---

[2] By order dated July 1, 2019, the Court enjoined Essex from transferring the Restrained Stones. *See Order Denying Debtor's Motion for a Temporary Restraining Order and Granting Stipulated Relief* [Dkt. No. 10] (the "<u>TRO Order</u>"). The Restrained Stones are the last two listed on the schedule attached to the TRO Order.

[3] On August 19, 2019, Essex's counsel docketed a letter to the Court stating, in pertinent part, as follows:

> The gems were couriered here from Moscow last week and are now reposed in a dedicated safe box at Chase Bank, 214 Broadway, N.Y., N.Y. under my sole control. Further, as ordered, last Thursday we supplied to D & M Capital Group, LLC's counsel the itinerary for the courier as well as copies of insurance certificates naming the ostensible "participants" in the gems (provided to us by counsel) as additional insureds. Finally, I just emailed counsel photographs of the gems which I personally took this morning and have a videotape of sealing the gems in an envelope and depositing the envelope in the safety deposit box, then placing it in the vault.

Letter Regarding Deposit of Restrained Gems with Bank [Dkt. No. 23].

[4] All the gems consigned to and converted by Essex are collectively referred to as the Precious Stones in the Amended Complaint. The other Precious Stones not subject to the TRO Order are Item Nos. JR0182, DM2950, JR0280, and JR0306.

[5] Copies of these discovery demands are attached as <u>Exhibit B</u>.



**I.  Defendants Have Failed to Provide Plaintiff with All Information that the Court Required.**

At the Status Conference, Paul admitted that he transferred all of the Precious Stones to a gem dealer in Russia to satisfy his own debts of over $17 M, and that he did this after Plaintiff filed its chapter 11 case. *See* Status Conf. Tr. 39:10-21; 41:10 – 42:13. After Paul's admission, the Court directed Defendants to do the following with respect to the Restrained Stones: (1) by Friday, August 16, 2019, put the Restrained Stones in transit from Russia to Essex's counsel in the United States; (2) secure the Restrained Stones in a safe deposit box in a bank vault; (3) insure the Restrained Stones fully; and (4) provide tracking information to Plaintiff's counsel and proof of insurance. *See id.* at 46:3-8; 56:18 – 57:9.

Plaintiff respectfully submits, however, that Defendants' compliance with the foregoing directive was incomplete.

Rather than providing Plaintiff with any tracking information, which would leave no doubt as to how the Restrained Stones reentered the United States, Essex's counsel provided my office with only a travel itinerary for a person named Lora Yakubova on August 15, 2019. The travel itinerary purports to show that Ms. Yakubova would be traveling from New York, New York, to Moscow, Russia, with a layover in Helsinki, Finland. According to the itinerary, Ms. Yakubova would arrive in Russia on August 14, 2019 and would return to New York on August 18, 2019. Essex's counsel also provided certificates of insurance naming Plaintiff and the participants in the Restrained Stones as additional insureds. These documents, however, raise more questions than they answer.

First, it is unclear who Ms. Yakubova is, whether she is a bonded carrier, and whether she actually went to Russia and retrieved the Restrained Stones from there. It seems possible that the Restrained Stones—and perhaps all of the Precious Stones—never left the United States despite Defendants' allegations to the contrary. Second, it is unclear whether the Restrained Stones were removed from Russia legally with all requisite taxes paid and customs declarations made. With respect to the insurance that Essex obtained, it is also unclear whether that insurance actually covered the Restrained Stones while in transit. Essex's counsel, as custodian of the Restrained Stones, should be able to provide complete answers to each of these questions.

Although Plaintiff received proof that the Restrained Stones are in a vault at Chase Bank, it doubts that the Restrained Stones are fully insured. On August 19, 2019, I requested that Essex's counsel obtain evidence of insurance that covers the safe deposit box in which the Restrained Stones are being held in the name of the law firm (with Plaintiff and the other participants named as additional insureds). Although Essex's counsel said that he expects to receive such certificates of insurance "imminently," no certificates have been provided. Without adequate insurance, the Restrained Stones are at serious risk.

**II.  Defendants Have Failed to Cooperate with Plaintiff to Schedule Depositions as the Court Required.**

At the Status Conference, the Court authorized Plaintiff to serve expedited discovery demands and directed the parties to work together to schedule depositions. *See* Status Conf. Tr.



46:13–15; 55:21-25. On that same day, August 13th, Plaintiff served Essex and Aleks Paul with notices of deposition and Plaintiff's first set of document demands addressed to those parties and returnable on September 6th as directed by the Court.[6] *See* Ex. B. As we informed Essex's counsel, the deposition dates provided in the notices were holding dates that could be changed if Defendants were unavailable and asked him to get back to us as soon as possible to set the deposition dates.

On August 16, 2019, Essex's counsel informed us that he was unavailable on the dates we proposed for depositions but would work with us on finding new dates. On August 19th and August 21st, I followed up with Essex's counsel about setting dates for the depositions. In response, Essex's counsel stated that Paul was away on vacation and, therefore, new dates could not yet be provided. But as this Court recognized at the Status Conference, the fact that Paul may be on vacation should not delay the scheduling of depositions because he should be reachable by telephone or email. Therefore, Defendants have failed to comply with this Court's instructions.

Should Your Honor have any questions regarding the foregoing, or request a conference with the parties, our office will be available.

                                                Respectfully submitted,

                                                */s/ Aurora Cassirer*
                                                  Aurora Cassirer

---

[6] On August 15, 2019, a subpoena to testify at a deposition and a subpoena to produce documents were served on Lawrence Paul. *See* Ex. B. Copies were also sent to Essex's counsel and all parties.