**SAM P. ISRAEL P.C.**
Sam P. Israel, Esq. (SI0270)
Timothy L. Foster, Esq. (TF8896)
180 Maiden Lane, 6th Floor
New York, NY 10038
Tel:    (646) 787-9880
samisrael@spi-pc.com
timfoster@spi-pc.com
*Attorneys for Essex Global Trading, Inc.*
*and Aleks Paul*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
In re:                                                    Chapter 11

THE D & M CAPITAL GROUP, LLC,
                                                          Case No. 19-11711 (SCC)
                    Debtor.
-----------------------------------------------------------------------X
THE D & M CAPITAL GROUP, LLC,

                    Plaintiff,

          -against-
                                                          Adv. Pro. No.: 19-1300 (SCC)
ESSEX GLOBAL TRADING, LLC, ALEKS PAUL,
and "JOHN DOES," said names being fictitious
and unknown,

                    Defendants,

-and-

RADWAN DIAMOND & JEWELLERY TRADING,
ULTIMATE DIAMOND CO., S.B. DIAMOND CORP.,
PALAWAN HOLDINGS LIMITED, and
GEMCUT S.A.,

                    Nominal Defendants.
-----------------------------------------------------------------------X

ESSEX GLOBAL TRADING, INC.,

       Plaintiff,               Adv. Pro. No.: _____

     -against-

MOTY SPECTOR,

       Third-Party Defendant.

-------------------------------------------------------------------X

## ANSWER, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT

Defendants Essex Global Trading, Inc. ("**Essex**") and Aleks Paul ("**Paul**"; together with Essex, the "**Defendants**"), by and through their counsel, Sam P. Israel, P.C., 180 Maiden Lane, 6th Floor, New York, New York 10038, as and for their answer to the Amended Complaint, and as and for their Counterclaims against plaintiff/counterclaim-defendant and Chapter 11 debtor The D&M Capital Group, LLC ("**D&M,**" the "**Debtor,**" or the "**Plaintiff**"), and their complaint against third party Moty Spector ("**Spector**"; together with D&M, the "**Counterclaim-Defendants**") state as follows:

1. Defendants state that Paragraph 1 of the Amended Complaint sets forth legal conclusions as to which no response is required, and deny all other allegations set forth in Paragraph 1 of the Amended Complaint.

2. Defendants deny the allegations set forth in Paragraph 2 of the Amended Complaint.

2

3.      Defendants state that Paragraph 3 of the Amended Complaint sets forth legal conclusions as to which no response is required, admit that Essex's possession of the Precious Stones is and was lawful,  and deny all other allegations set forth in Paragraph 3 of the Amended Complaint.

4.      Defendants admit that the Plaintiff is indebted to Essex in the amount of $6,500,000.00, and otherwise deny the allegations set forth in Paragraph 4 of the Amended Complaint.

5.      Defendants state that Paragraph 5 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that a response is required, Defendants deny all allegations set forth in Paragraph 5 of the Amended Complaint.

6.      Defendants state that Paragraph 6 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that a response is required, Defendants deny all allegations set forth in Paragraph 6 of the Amended Complaint.

7.      Defendants state that Paragraph 7 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that a response is required, Defendants deny all allegations set forth in Paragraph 7 of the Amended Complaint.

8.      Defendants state that Paragraph 8 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that a response is required, Defendants deny all allegations set forth in Paragraph 8 of the Amended Complaint.

9.      Defendants admit the allegations set forth in Paragraph 9 of the Amended Complaint, but specifically deny any liability as to the claims described therein.

10.     Defendants state that Paragraph 10 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that a response is required, Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 10 of the Amended Complaint.

11.     Defendants admit the allegations set forth in Paragraph 11 of the Amended Complaint.

12.     Defendants state that Paragraph 12 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that a response is required, Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 12 of the Amended Complaint.

13.     Defendants state that Paragraph 13 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that a response is required, Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 13 of the Amended Complaint.

14.     Defendants state that Paragraph 14 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that a response is required, Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 14 of the Amended Complaint.

15.     Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 15 of the Amended Complaint.

16.     Defendants state that Paragraph 16 of the Amended Complaint sets forth legal conclusions as to which no response is required.

4

17.    Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 17 of the Amended Complaint.

18.    Defendants deny that Essex "is engaged in lending funds at extremely high interest rates" and otherwise admit the allegations set forth in Paragraph 18 of the Amended Complaint.

19.    Defendants admit the allegations set forth in Paragraph 19 of the Amended Complaint.

20.    Defendants deny the allegations set forth in Paragraph 20 of the Amended Complaint.

21.    Defendants deny the allegations set forth in Paragraph 21 of the Amended Complaint.

22.    Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 22 of the Amended Complaint.

23.    Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 23 of the Amended Complaint.

24.    Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 24 of the Amended Complaint.

25.    Defendants state that any documents referenced in Paragraph 25 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny personal knowledge or information

sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 25 of the Amended Complaint.

26.    Defendants state that any documents referenced in Paragraph 26 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 26 of the Amended Complaint.

27.    Defendants state that any documents referenced in Paragraph 27 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 27 of the Amended Complaint.

28.    Defendants state that any documents referenced in Paragraph 28 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 28 of the Amended Complaint.

29.    Defendants state that any documents referenced in Paragraph 29 of the Amended Complaint speak for themselves and that as to those documents no response is required,

and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny the allegations set forth in Paragraph 29 of the Amended Complaint.

30.     Defendants deny the allegations set forth in Paragraph 30 of the Amended Complaint.

31.     Defendants state that any documents referenced in Paragraph 31 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 31 of the Amended Complaint.

32.     Defendants state that any documents referenced in Paragraph 32 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 32 of the Amended Complaint.

33.     Defendants deny the allegations set forth in Paragraph 33 of the Amended Complaint.

34.     Defendants state that any documents referenced in Paragraph 34 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms,

7

force and meaning; Defendants otherwise deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 34 of the Amended Complaint.

35.    Defendants state that any documents referenced in Paragraph 35 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 35 of the Amended Complaint.

36.    Defendants state that any documents referenced in Paragraph 36 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny the allegations set forth in Paragraph 36 of the Amended Complaint.

37.    Defendants state that any documents referenced in Paragraph 37 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 37 of the Amended Complaint.

38.    Defendants state that any documents referenced in Paragraph 38 of the Amended Complaint speak for themselves and that as to those documents no response is required,

and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 38 of the Amended Complaint.

39.     Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 39 of the Amended Complaint.

40.     Defendants state that any documents referenced in Paragraph 40 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny the allegations set forth in Paragraph 40 of the Amended Complaint.

41.     Defendants state that any documents referenced in Paragraph 41 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 41 of the Amended Complaint.

42.     Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 42 of the Amended Complaint.

43.     Defendants deny the allegations set forth in Paragraph 43 of the Amended Complaint.

44.     Defendants state that any documents referenced in Paragraph 44 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 44 of the Amended Complaint.

45.     Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 45 of the Amended Complaint.

46.     Defendants state that any documents referenced in Paragraph 46 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny the allegations set forth in Paragraph 46 of the Amended Complaint.

47.     Defendants admit that Essex made certain loans to the Plaintiff, specifically denies that such loans were "predatory," and otherwise deny the allegations set forth in Paragraph 47 of the Amended Complaint.

48.     Defendants admit that as of the Petition Date, the Plaintiff was indebted to Essex in the amount of $6,500,000.00, specifically deny that the debt was "unsecured" and state affirmatively that the debt was secured by collateral, and otherwise deny the allegations set forth in Paragraph 48 of the Amended Complaint.

49.     Defendants state that the allegations set forth in Paragraph 49 of the Amended Complaint are irrelevant and immaterial to the claims at issue, impertinent, scandalous,

and meant only to harass and cause prejudice to the Defendants, and thus the Defendants respectfully submit that the allegations set forth in Paragraph 49 of the Amended Complaint should be stricken pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. To the extent that any response is required, Defendants admit that Paul did receive a criminal sentence, state that the court documents referenced in Paragraph 49 of the Amended Complaint speak for themselves and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; otherwise, Defendants deny the allegations set forth in Paragraph 49 of the Amended Complaint.

50.     Defendants deny the allegations set forth in Paragraph 50 of the Amended Complaint.

51.     Defendants deny the allegations set forth in Paragraph 51 of the Amended Complaint.

52.     Defendants state that any documents referenced in Paragraph 52 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny the allegations set forth in Paragraph 52 of the Amended Complaint.

53.     Defendants deny the allegations set forth in Paragraph 53 of the Amended Complaint.

54.     Defendants deny the allegations set forth in Paragraph 54 of the Amended Complaint.

55.     Defendants state that any documents referenced in Paragraph 55 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 55 of the Amended Complaint.

56.     Defendants state that any documents referenced in Paragraph 56 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 56 of the Amended Complaint.

57.     Defendants state that any documents referenced in Paragraph 57 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 57 of the Amended Complaint.

58.     Defendants state that any documents referenced in Paragraph 58 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 58 of the Amended Complaint.

59.     Defendants deny the allegations set forth in Paragraph 59 of the Amended Complaint.

60.     Defendants state that Paragraph 60 of the Amended Complaint sets forth a legal conclusion as to which no response is required; Defendants state further that any documents referenced in Paragraph 60 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 60 of the Amended Complaint.

61.     Defendants state that any documents referenced in Paragraph 61 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 61 of the Amended Complaint.

62.     Defendants state that any documents referenced in Paragraph 62 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 62 of the Amended Complaint.

63.     Defendants state that Paragraph 63 of the Amended Complaint sets forth a legal conclusion as to which no response is required; Defendants state further that any documents referenced in Paragraph 63 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent

that any response is required, Defendants deny the allegations set forth in Paragraph 63 of the Amended Complaint.

64.     Defendants state that any documents referenced in Paragraph 64 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny the allegations set forth in Paragraph 64 of the Amended Complaint.

65.     Defendants state that any documents referenced in Paragraph 65 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 65 of the Amended Complaint.

66.     Defendants state that any documents referenced in Paragraph 66 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants admit that no UCC financing statement was filed with respect to Memo 5276 and otherwise deny the allegations set forth in Paragraph 66 of the Amended Complaint.

67.     Defendants state that any documents referenced in Paragraph 67 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms,

14

force and meaning; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 67 of the Amended Complaint.

68.    Defendants state that any documents referenced in Paragraph 68 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 68 of the Amended Complaint.

69.    Defendants state that any documents referenced in Paragraph 69 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants admit that no UCC financing statement was filed with respect to Memo 5296 and otherwise deny the allegations set forth in Paragraph 69 of the Amended Complaint.

70.    Defendants admit the allegations set forth in Paragraph 70 of the Amended Complaint.

71.    Defendants state that any documents referenced in Paragraph 71 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 71 of the Amended Complaint.

72.     Defendants state that any documents referenced in Paragraph 72 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants state affirmatively that as of May 2019, the Kashmir Sapphire belonged solely to Essex, and that to the extent the Plaintiff possessed the Kashmir Sapphire at that time it was on consignment to D&M from Essex, and Defendants otherwise deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 72 of the Amended Complaint.

73.     Defendants deny the allegations set forth in Paragraph 73 of the Amended Complaint.

74.     Defendants deny the allegations set forth in Paragraph 74 of the Amended Complaint.

75.     Defendants state that any documents referenced in Paragraph 75 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 75 of the Amended Complaint.

76.     Defendants state that any documents referenced in Paragraph 76 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms,

force and meaning; Defendants otherwise deny the allegations set forth in Paragraph 76 of the Amended Complaint.

77.    Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 77 of the Amended Complaint.

78.    Defendants state that any documents referenced in Paragraph 78 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 78 of the Amended Complaint.

79.    Defendants admit the allegations set forth in Paragraph 79 of the Amended Complaint.

80.    Defendants state that any documents or statements referenced in Paragraph 80 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents or statements for their full terms, force and meaning; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 80 of the Amended Complaint.

81.    Defendants deny the allegations set forth in Paragraph 81 of the Amended Complaint.

82.    Defendants state that any documents referenced in Paragraph 82 of the Amended Complaint speak for themselves and that as to those documents no response is required,

and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 82 of the Amended Complaint.

83.    Defendants state that any documents referenced in Paragraph 83 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 83 of the Amended Complaint.

84.    Defendants deny the allegations set forth in Paragraph 84 of the Amended Complaint.

85.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 84 of the Amended Complaint.

86.    Defendants state that Paragraph 86 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that a response is required, Defendants deny the allegations set forth in Paragraph 86 of the Amended Complaint.

87.    Defendants state affirmatively that the allegations set forth in Paragraph 87 of the Amended Complaint only reflect the Defendants' position in part, and otherwise admit the allegations set forth in Paragraph 87 of the Amended Complaint.

88.    Defendants admit that the Plaintiff disputes the position of the Defendants and otherwise deny the allegations set forth in Paragraph 88 of the Amended Complaint.

89.     Defendants state that Paragraph 89 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that a response is required, Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 89 of the Amended Complaint.

90.     Defendants deny the allegations set forth in Paragraph 90 of the Amended Complaint.

91.     Defendants state that any documents referenced in Paragraph 91 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 91 of the Amended Complaint.

92.     Defendants state that Paragraph 92 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that a response is required, Defendants deny the allegations set forth in Paragraph 92 of the Amended Complaint.

93.     Defendants admit that Essex had possession of the Precious Stones before the Plaintiff filed for bankruptcy, and otherwise deny the allegations set forth in Paragraph 93 of the Amended Complaint.

94.     Defendants state that any documents referenced in Paragraph 94 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms,

force and meaning; Defendants otherwise deny the allegations set forth in Paragraph 94 of the Amended Complaint.

95.    Defendants state that any documents referenced in Paragraph 95 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants state further that Paragraph 95 of the Amended Complaint sets forth legal conclusions as to which no response is required; Defendants otherwise deny the allegations set forth in Paragraph 95 of the Amended Complaint.

96.    Defendants deny the allegations set forth in Paragraph 96 of the Amended Complaint.

97.    Defendants state that any documents referenced in Paragraph 97 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants state further that Paragraph 97 of the Amended Complaint sets forth legal conclusions as to which no response is required; Defendants otherwise deny the allegations set forth in Paragraph 97 of the Amended Complaint.

98.    Defendants state that Paragraph 98 of the Amended Complaint sets forth legal conclusions as to which no response is required; Defendants otherwise deny the allegations set forth in Paragraph 98 of the Amended Complaint.

99.    Defendants deny the allegations set forth in Paragraph 99 of the Amended Complaint.

100.    Defendants deny the allegations set forth in Paragraph 100 of the Amended Complaint.

101.    Defendants state that Paragraph 101 of the Amended Complaint sets forth legal conclusions as to which no response is required; Defendants otherwise deny the allegations set forth in Paragraph 101 of the Amended Complaint.

102.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 101 of the Amended Complaint.

103.    Defendants admit the allegations set forth in Paragraph 103 of the Amended Complaint.

104.    Defendants deny the allegations set forth in Paragraph 104 of the Amended Complaint.

105.    Defendants state that Paragraph 105 of the Amended Complaint sets forth legal conclusions as to which no response is required; Defendants otherwise deny the allegations set forth in Paragraph 105 of the Amended Complaint.

106.    Defendants state that Paragraph 106 of the Amended Complaint sets forth legal conclusions as to which no response is required; Defendants otherwise deny the allegations set forth in Paragraph 106 of the Amended Complaint.

107.    Defendants state that Paragraph 107 of the Amended Complaint sets forth legal conclusions as to which no response is required; Defendants otherwise deny the allegations set forth in Paragraph 107 of the Amended Complaint.

108.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 107 of the Amended Complaint.

109.    Defendants state that Paragraph 109 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 109 of the Amended Complaint.

110.    Defendants admit the allegations set forth in Paragraph 110 of the Amended Complaint.

111.    Defendants deny the allegations set forth in Paragraph 111 of the Amended Complaint.

112.    Defendants deny the allegations set forth in Paragraph 112 of the Amended Complaint.

113.    Defendants admit the allegations set forth in Paragraph 113 of the Amended Complaint.

114.    Defendants state that Paragraph 114 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 114 of the Amended Complaint.

115.    Defendants state that Paragraph 115 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 115 of the Amended Complaint.

116.    Defendants deny the allegations set forth in Paragraph 116 of the Amended Complaint.

117.    Defendants state that Paragraph 117 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 117 of the Amended Complaint.

118.    Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 118 of the Amended Complaint regarding the values of the Plaintiff's assets and liabilities, and otherwise deny the allegations set forth in Paragraph 118 of the Amended Complaint.

119.    Defendants state that Paragraph 119 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 119 of the Amended Complaint.

120.    Defendants deny the allegations set forth in Paragraph 120 of the Amended Complaint.

121.    Defendants state that Paragraph 121 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 121 of the Amended Complaint.

122.    Defendants state that Paragraph 122 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 122 of the Amended Complaint.

123.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 122 of the Amended Complaint.

124.    Defendants state affirmatively that the Plaintiff "granted Essex a collateral security interest in one or more of the Precious Stones" prior to February 28, 2019, and otherwise admit the allegations set forth in Paragraph 124 of the Amended Complaint.

125.    Defendants deny personal knowledge or information sufficient to form a belief as to the truthfulness of the allegations set forth in Paragraph 125 of the Amended Complaint.

126.    Defendants state that Paragraph 126 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 126 of the Amended Complaint.

127.    Defendants state that Paragraph 127 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 127 of the Amended Complaint.

128.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 127 of the Amended Complaint.

129.    Defendants deny the allegations set forth in Paragraph 129 of the Amended Complaint.

130.    Defendants deny the allegations set forth in Paragraph 130 of the Amended Complaint.

131.    Defendants deny the allegations set forth in Paragraph 131 of the Amended Complaint.

132.    Defendants state that Paragraph 132 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 132 of the Amended Complaint.

133.    Defendants deny the allegations set forth in Paragraph 133 of the Amended Complaint.

134.    Defendants state that Paragraph 134 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 134 of the Amended Complaint.

135.    Defendants state that Paragraph 135 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 135 of the Amended Complaint.

136.    Defendants deny the allegations set forth in Paragraph 136 of the Amended Complaint.

137.    Defendants state that Paragraph 137 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 137 of the Amended Complaint.

138.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 137 of the Amended Complaint.

139.    Defendants state that Paragraph 139 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 139 of the Amended Complaint.

140.    Defendants state that Paragraph 140 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 140 of the Amended Complaint.

141.    Defendants deny the allegations set forth in Paragraph 141 of the Amended Complaint.

142.    Defendants deny the allegations set forth in Paragraph 142 of the Amended Complaint.

143.    Defendants admit that the base value of Essex's claim against the Plaintiff is $6,500,000.00, specifically deny that Essex's claim against the Plaintiff is "Unsecured," and otherwise deny the allegations set forth in Paragraph 143 of the Amended Complaint.

144.    Defendants state that Paragraph 144 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 144 of the Amended Complaint.

26

145.    Defendants state that Paragraph 145 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 145 of the Amended Complaint.

146.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 145 of the Amended Complaint.

147.    Defendants deny the allegations set forth in Paragraph 147 of the Amended Complaint.

148.    Defendants state that Paragraph 148 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 148 of the Amended Complaint.

149.    Defendants deny the allegations set forth in Paragraph 149 of the Amended Complaint.

150.    Defendants deny the allegations set forth in Paragraph 150 of the Amended Complaint.

151.    Defendants deny the allegations set forth in Paragraph 151 of the Amended Complaint.

152.    Defendants deny the allegations set forth in Paragraph 152 of the Amended Complaint.

153.    Defendants deny the allegations set forth in Paragraph 153 of the Amended Complaint.

154.    Defendants state that any documents referenced in Paragraph 154 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny the allegations set forth in Paragraph 154 of the Amended Complaint.

155.    Defendants deny the allegations set forth in Paragraph 155 of the Amended Complaint.

156.    Defendants deny the allegations set forth in Paragraph 156 of the Amended Complaint.

157.    Defendants state that Paragraph 157 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 157 of the Amended Complaint.

158.    Defendants deny the allegations set forth in Paragraph 158 of the Amended Complaint.

159.    Defendants state that any documents referenced in Paragraph 159 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants further state that Paragraph 159 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 159 of the Amended Complaint.

160.    Defendants state that Paragraph 160 of the Amended Complaint sets forth legal conclusions as to which no response is required; Defendants otherwise deny the allegations set forth in Paragraph 160 of the Amended Complaint.

161.    Defendants state that Paragraph 161 of the Amended Complaint sets forth legal conclusions as to which no response is required; Defendants otherwise deny the allegations set forth in Paragraph 161 of the Amended Complaint.

162.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 161 of the Amended Complaint.

163.    Defendants deny the allegations set forth in Paragraph 163 of the Amended Complaint.

164.    Defendants state that Paragraph 164 of the Amended Complaint sets forth legal conclusions as to which no response is required; Defendants otherwise deny the allegations set forth in Paragraph 164 of the Amended Complaint.

165.    Defendants deny the allegations set forth in Paragraph 165 of the Amended Complaint.

166.    Defendants deny the allegations set forth in Paragraph 166 of the Amended Complaint.

167.    Defendants deny the allegations set forth in Paragraph 167 of the Amended Complaint.

168.    Defendants deny the allegations set forth in Paragraph 168 of the Amended Complaint.

169.    Defendants deny the allegations set forth in Paragraph 169 of the Amended Complaint.

170.    Defendants deny the allegations set forth in Paragraph 170 of the Amended Complaint.

171.    Defendants state that Paragraph 171 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 171 of the Amended Complaint.

172.    Defendants state that any documents referenced in Paragraph 172 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants further state that Paragraph 172 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 172 of the Amended Complaint.

173.    Defendants state that Paragraph 173 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 173 of the Amended Complaint.

174.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 173 of the Amended Complaint.

175.    Defendants state that Paragraph 175 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 175 of the Amended Complaint.

176.    Defendants deny the allegations set forth in Paragraph 176 of the Amended Complaint.

177.    Defendants state that Paragraph 177 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 177 of the Amended Complaint.

178.    Defendants state that Paragraph 178 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 178 of the Amended Complaint.

179.    Defendants state that Paragraph 179 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 179 of the Amended Complaint.

180.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 179 of the Amended Complaint.

181.    Defendants state that Paragraph 181 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is

31

required, Defendants deny the allegations set forth in Paragraph 181 of the Amended Complaint.

182.    Defendants state that Paragraph 182 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 182 of the Amended Complaint.

183.    Defendants state that Paragraph 183 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 183 of the Amended Complaint.

184.    Defendants state that Paragraph 184 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 184 of the Amended Complaint.

185.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 184 of the Amended Complaint.

186.    Defendants deny the allegations set forth in Paragraph 186 of the Amended Complaint.

187.    Defendants deny the allegations set forth in Paragraph 187 of the Amended Complaint.

188.    Defendants deny the allegations set forth in Paragraph 188 of the Amended Complaint.

189.    Defendants deny the allegations set forth in Paragraph 189 of the Amended Complaint.

190.    Defendants deny the allegations set forth in Paragraph 190 of the Amended Complaint.

191.    Defendants deny the allegations set forth in Paragraph 191 of the Amended Complaint.

192.    Defendants deny the allegations set forth in Paragraph 192 of the Amended Complaint.

193.    Defendants deny the allegations set forth in Paragraph 193 of the Amended Complaint, and specifically deny any fraud or fraudulent conduct on the part of the Defendants.

194.    Defendants deny the allegations set forth in Paragraph 194 of the Amended Complaint.

195.    Defendants deny the allegations set forth in Paragraph 195 of the Amended Complaint.

196.    Defendants deny the allegations set forth in Paragraph 196 of the Amended Complaint.

197.    Defendants deny the allegations set forth in Paragraph 197 of the Amended Complaint.

198.    Defendants deny the allegations set forth in Paragraph 198 of the Amended Complaint.

199.    Defendants state that Paragraph 199 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 199 of the Amended Complaint.

200.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 199 of the Amended Complaint.

201.    Defendants state that any documents referenced in Paragraph 201 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 201 of the Amended Complaint.

202.    Defendants state that any documents referenced in Paragraph 202 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants further state that Paragraph 202 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 202 of the Amended Complaint.

203.    Defendants state that Paragraph 203 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 203 of the Amended Complaint.

34

204.    Defendants state that any documents referenced in Paragraph 204 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 204 of the Amended Complaint.

205.    Defendants state that any documents referenced in Paragraph 205 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 205 of the Amended Complaint.

206.    Defendants state that any documents referenced in Paragraph 206 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants further state that Paragraph 206 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 206 of the Amended Complaint.

207.    Defendants state that Paragraph 207 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 207 of the Amended Complaint.

208.    Defendants state that Paragraph 208 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 208 of the Amended Complaint.

209.    Defendants deny the allegations set forth in Paragraph 209 of the Amended Complaint.

210.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 209 of the Amended Complaint.

211.    Defendants admit the allegations set forth in Paragraph 211 of the Amended Complaint.

212.    Defendants state that any documents referenced in Paragraph 212 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 212 of the Amended Complaint.

213.    Defendants deny the allegations set forth in Paragraph 213 of the Amended Complaint.

214.    Defendants deny the allegations set forth in Paragraph 214 of the Amended Complaint.

215.    Defendants state that Paragraph 215 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is

required, Defendants deny the allegations set forth in Paragraph 215 of the Amended Complaint.

216.    Defendants deny the allegations set forth in Paragraph 214 of the Amended Complaint.

217.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 216 of the Amended Complaint.

218.    Defendants admit the allegations set forth in Paragraph 218 of the Amended Complaint.

219.    Defendants deny the allegations set forth in Paragraph 219 of the Amended Complaint.

220.    Defendants deny the allegations set forth in Paragraph 220 of the Amended Complaint, and specifically deny any "misrepresentation" on the part of the Defendants.

221.    Defendants deny the allegations set forth in Paragraph 221 of the Amended Complaint, and specifically deny any "misrepresentation" on the part of the Defendants.

222.    Defendants deny the allegations set forth in Paragraph 222 of the Amended Complaint, and specifically deny any "misrepresentation" on the part of the Defendants.

223.    Defendants deny the allegations set forth in Paragraph 223 of the Amended Complaint.

224.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 223 of the Amended Complaint.

225.    Defendants state that Paragraph 225 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is

required, Defendants deny the allegations set forth in Paragraph 225 of the Amended Complaint.

226.    Defendants deny the allegations set forth in Paragraph 226 of the Amended Complaint.

227.    Defendants state that Paragraph 227 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 227 of the Amended Complaint.

228.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 227 of the Amended Complaint.

229.    Defendants deny the allegations set forth in Paragraph 229 of the Amended Complaint.

230.    Defendants admit that at some point the "Defendants took physical possession of the Precious Stones," specifically deny that this was done "[p]ursuant to the Essex Memos," and otherwise deny the allegations set forth in Paragraph 230 of the Amended Complaint.

231.    Defendants deny the allegations set forth in Paragraph 231 of the Amended Complaint.

232.    Defendants deny the allegations set forth in Paragraph 232 of the Amended Complaint.

233.    Defendants state that Paragraph 233 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is

required, Defendants deny the allegations set forth in Paragraph 233 of the Amended Complaint.

234.    Defendants deny the allegations set forth in Paragraph 234 of the Amended Complaint.

235.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 234 of the Amended Complaint.

236.    Defendants state that Paragraph 236 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 236 of the Amended Complaint.

237.    Defendants deny the allegations set forth in Paragraph 237 of the Amended Complaint.

238.    Defendants deny the allegations set forth in Paragraph 238 of the Amended Complaint.

239.    Defendants admit that Essex "came into possession of the Precious Stones lawfully," specifically deny that Essex's possession was "as consignee," and otherwise deny the allegations set forth in Paragraph 239 of the Amended Complaint.

240.    Defendants admit the allegations set forth in Paragraph 240 of the Amended Complaint.

241.    Defendants deny the allegations set forth in Paragraph 241 of the Amended Complaint, and specifically deny that the Plaintiff is entitled to the requested relief or any relief whatsoever.

242.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 241 of the Amended Complaint.

243.    Defendants state that Paragraph 243 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 243 of the Amended Complaint.

244.    Defendants state that Paragraph 244 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 244 of the Amended Complaint.

245.    Defendants state that Paragraph 245 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 236 of the Amended Complaint, and specifically deny that Essex was "consignee of the Precious Stones."

246.    Defendants state that any documents referenced in Paragraph 246 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 246 of the Amended Complaint.

247.    Defendants deny the allegations set forth in Paragraph 247 of the Amended Complaint.

248.    Defendants deny the allegations set forth in Paragraph 248 of the Amended Complaint.

249.    Defendants deny the allegations set forth in Paragraph 249 of the Amended Complaint.

250.    Defendants state that Paragraph 250 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 250 of the Amended Complaint.

251.    Defendants state that Paragraph 251 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 251 of the Amended Complaint.

252.    Defendants state that Paragraph 252 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 252 of the Amended Complaint.

253.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 252 of the Amended Complaint.

254.    Defendants deny the allegations set forth in Paragraph 254 of the Amended Complaint.

255.    Defendants state that any documents referenced in Paragraph 255 of the Amended Complaint speak for themselves and that as to those documents no response is required,

and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants further state that Paragraph 255 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 255 of the Amended Complaint.

256.    Defendants deny the allegations set forth in Paragraph 256 of the Amended Complaint.

257.    Defendants state that Paragraph 257 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 257 of the Amended Complaint.

258.    Defendants deny the allegations set forth in Paragraph 258 of the Amended Complaint.

259.    Defendants deny the allegations set forth in Paragraph 259 of the Amended Complaint.

260.    Defendants repeat, reallege and incorporate by reference each and every one of their responses to Paragraphs 1 through 259 of the Amended Complaint.

261.    Defendants state that Paragraph 261 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants specifically deny any "misconduct," and otherwise deny the allegations set forth in Paragraph 261 of the Amended Complaint.

262.    Defendants deny the allegations set forth in Paragraph 262 of the Amended Complaint.

263.    Defendants state affirmatively that the Plaintiff has no interests in the Precious Stones and that the Defendants have not "failed" to do anything required of them, and otherwise admit the allegations set forth in Paragraph 263 of the Amended Complaint.

264.    Defendants state that any documents referenced in Paragraph 264 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; Defendants otherwise deny the allegations set forth in Paragraph 264 of the Amended Complaint.

265.    Defendants state that any documents referenced in Paragraph 265 of the Amended Complaint speak for themselves and that as to those documents no response is required, and the Defendants respectfully refer the Court to said documents for their full terms, force and meaning; to the extent that a response is required, Defendants admit that "they are entitled to retain some or all of the Precious Stones as collateral for loan debt," and otherwise deny the allegations set forth in Paragraph 265 of the Amended Complaint.

266.    Defendants state that Paragraph 266 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is required, Defendants deny the allegations set forth in Paragraph 266 of the Amended Complaint.

267.    Defendants state that Paragraph 267 of the Amended Complaint sets forth legal conclusions as to which no response is required; to the extent that any response is

required, Defendants deny the allegations set forth in Paragraph 267 of the Amended

Complaint.

268. Defendants deny the allegations set forth in Paragraph 268 of the Amended

Complaint, and specifically deny that the Plaintiff is entitled to the requested relief or any

relief whatsoever.

269. Defendants deny that the Plaintiff is entitled to judgment in its favor or for any

relief whatsoever, including the relief requested in Paragraphs A through T of the prayer

for relief contained in the "Wherefore" clause of the Amended Complaint.

270. Defendants deny each and every allegation in the Amended Complaint not

otherwise expressly addressed herein.


## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Amended Complaint fails to state a claim, in whole or in part, upon which

relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The relief requested in the Amended Complaint is barred by the doctrines of

laches, waiver, and estoppel, and by other equitable doctrines.

### THIRD AFFIRMATIVE DEFENSE

The relief requested in the Amended Complaint is barred due to the Plaintiff's own

misconduct, including fraud.

### FOURTH AFFIRMATIVE DEFENSE

The relief requested in the Amended Complaint is barred because the Plaintiff has

no valid ownership rights in the property at issue, and therefore has no standing to sue.

FIFTH AFFIRMATIVE DEFENSE

The relief requested in the Amended Complaint is barred by the doctrine of unclean hands.

SIXTH AFFIRMATIVE DEFENSE

The relief requested in the Amended Complaint is barred by the doctrine of accord and satisfaction.

## RESERVATION OF RIGHTS

The Defendants reserve the right to assert any additional and further defenses as may be revealed by discovery or otherwise.

## PRAYER FOR RELIEF

*WHEREFORE*, the Defendants respectfully request that this Court enter a judgment granting the following relief:

1) That the Amended Complaint be dismissed with prejudice;
2) That Defendants be awarded attorney's fees, costs and applicable interest; and
3) Whatever other and further relief the Court deems just and proper.

## COUNTERCLAIMS

1.      This is an action seeking a judicial declaration, pursuant to 28 U.S.C. §§ 2201- 2202, that that the full ownership rights in certain jewelry and precious gemstones at issue in this proceeding belong solely to the defendant/counterclaim-plaintiff Essex Global Trading, Inc. ("**Essex**" or the "**Counterclaim-Plaintiff**"), and not the plaintiff/debtor/counterclaim-defendant The D&M Capital Group, LLC ("**D&M**" or the "**Counterclaim-Defendant**"), by reason of the property being provided to Essex as

security on a loan as to which D&M not only defaulted, but then affirmatively declared that Essex should retain the gems in satisfaction of the debt.

2.      Additional claims are asserted against D&M and its owner, third party defendant Moty Spector ("**Spector**") arising from their his deliberate concealment of competing interests in and to gem stones that were placed as collateral on loans given by Essex and which non-disclosures have exposed Essex to a number of liabilities through no fault of its own.

## THE PARTIES

3.      On information and belief, Counterclaim-Defendant D&M is a corporation organized under the laws of the State of New York, with offices at 592 Fifth Avenue, New York, New York.

4.      Counterclaim-Plaintiff Essex is a corporation organized under the laws of the State of New York,  with its principal place of business at 580 Fifth Avenue, 21st Floor, New York, New York.

5.      Upon information and belief, third-party defendant Moty Spector is an individual residing in the State of New York and who is the principal and officer of D&M.

## JURISDICTION

6.      This Court has jurisdiction over the Counterclaims to the extent that it has jurisdiction over the claims in the Amended Complaint, pursuant to  28 U.S.C. § 1334(b).

46

## FACTS

**The Precious Stones in Dispute Were Loan Collateral and Belong to Essex**

7.    As suggested in the Amended Complaint, at issue in this adversary proceeding are six precious gemstones and pieces of fine jewelry, collectively characterized in the Amended Complaint as the "**Precious Stones.**"

8.    The six items that comprise the Precious Stones include:

(1) A ring containing a 23.38 carat Kashmir sapphire, listed as "Class JR0182 – One PL Ring with 23.38 CTS, KASHMIR SAPPHIRE WITH (2) BLTS 0.89 AND 0.83 CTS JR0182" and known as the "**Kashmir Sapphire**" or "**Item JR0182**";

(2) A pink diamond listed as "CLASS DM2950 10.51 PS FDORPK VS1" and known as the "**Pink Diamond**" or "**Item DM2950**";

(3) A ring containing a 7.02 carat ruby listed as "Item No. JR0306, Platinum Ring with Ruby 7.02 CT surrounded by 8 OV 3.43 CT with Micro Pave on Shank 35 CT" and known as the "**Ruby Ring**" or "**Item JR0306**";

(4) A ring containing a yellow diamond listed as "Item No. JR0280 – YG Diamond Ring with SE 10 02CT FVY VS2 Set with FYI Melee 2 15 CT TW" and known as the "**Yellow Diamond**" or "**Item JR 0280;**

(5) A pair of emerald and pearl earrings listed as "Item No. JE0104 A Pair of Emerald Pearl and Diamond Earring with Two Drop Emerald Briolettes" and known as the "**Emerald Earrings**" or "**Item JE0104**"; and

(6) A cross-shaped pendant listed as "Item No. JP 0105, one cross pndt with (7) FIPK diamonds 4.69cts ttl and 1.17cts white melee w black rope and (4) white

melee 0.2 cts ttl on caps on end" and known as the "**Cross Pendant**" or "**Item JP0105**".

9.      Each of the Precious Stones was provided to Essex by D&M as collateral for, and eventually in repayment and satisfaction of, monetary loans made by Essex to D&M at D&M's request.

**Essex Extends The First Secured Monetary Loan to D&M**

10.     Essex and D&M are both in the business of buying and selling fine jewelry and precious gemstones.

11.     Essex and D&M have a lengthy history of business dealings with one another.

12.     In mid-2012, Spector, the principal of D&M, contacted Aleks Paul ("**Paul**"), the principal of Essex, and requested that Essex issue a monetary loan to D&M.

13.     Upon information and belief, Spector and D&M were required to seek funding through a familiar business partner such as Essex, because Spector and D&M have difficulties obtaining credit through traditional financial institutions, due in part to Spector's poor reputation in the industry.

14.     Upon information and belief, Spector's poor reputation is due in part to his involvement in an infamous bribery scandal in 2005, in which Spector and his former business, Vivid Collection LLC, were accused of bribing laboratory certifiers at the Gemological Institute of America (the "**GIA**") to inflate the certified grading, and therefore the value, for certain gemstones submitted by Spector to the GIA for testing and grading.

48

15.     Upon information and belief, as a result of legal action stemming from the scandal involving the GIA, Spector's authority to trade in diamonds is restricted or eliminated.

16.     Through a series of wire transfers and checks, beginning with a wire transfer of $1,000,000.00 on or around August 31, 2012, Essex made a loan to D&M which was intended to be for the total amount of $8,000,000.00 (the "**First Loan**").

17.     The funding of the First Loan from Essex to D&M included a check dated November 1, 2012 in the amount of $3,500,000.00, a check dated January 16, 2013 in the amount of $1,385,000.00, a check dated February 8, 2013 in the amount of $1,000,000.00, and a number of other checks and wire transfers issued to D&M.

18.     In order to provide the requested loan to D&M, Essex was required to seek out and itself borrow a portion of the funds from other sources. Thus, Essex incurred its own debt in order to help D&M by furnishing the First Loan.

19.     As of June 11, 2013, the outstanding principal of the First Loan owed by D&M was $8,000,000.00.

20.     In December of 2013, the balance of the principal of the First Loan rose as high as $10,500,000.00 when Essex issued to D&M a check dated December 17, 2013 in the amount of $2,180,000.00.

21.     In April and June of 2014, D&M made significant repayments on the First Loan to bring the outstanding balance of principal on the First Loan to $8,000,000.00 as of June 20, 2014.

49

22.     From the beginning, and at all relevant times, the agreement and practice of Essex and D&M was to secure the loans made to D&M, using certain precious gemstones and jewelry in D&M's inventory as collateral assigned to Essex.

23.     D&M repeatedly recorded this collateral in "Memos" assigning gemstones to Essex. Upon information and belief, D&M issued a Memo every time it transferred or received the return of a piece of inventory.

24.     In these Memos, D&M consistently assigned wildly inflated and inaccurate values for the collateral inventory.

25.     For example, a "Memo" Number 3610, issued by D&M and dated April 23, 2013, describes a certain 102.88 carat diamond transferred to Essex and states that the gem is "For the purpose of colatarol [*sic*] for loan for D&M 7.5 million."

26.     The "Amount" listed by D&M on Memo No. 3610 for the diamond described therein is $18,000,000.00.

27.     Memo Number 3646, issued by D&M and dated June 17, 2013, lists the "Ocean Dream" ring provided "for purpose of collateral only against $8 million dollar loan from Essex to DM."

28.     The "Amount" listed by D&M on Memo No. 3646 for the diamond described therein is $22,000,000.00.

29.     Memo Number 3610 and Memo Number 3646 reflect collateral for the same loan, for which the outstanding principal increased from $7,500,000.00 to $8,000,000.00 between April 23, 2013 and June 17, 2013 by virtue of a check issued from Essex to D&M on June 11, 2013 in the amount of $500,000.00.

30.    The "Amounts" assigned by D&M to the gems listed in Memo No. 3610 and Memo

No. 3646 are greatly overstated and do not reflect the actual value of the gems listed

therein.

31.    The "Ocean Dream" claimed by D&M to be valued at $22,000,000.00 was reported

by Christie's in May of 2014 to have an estimated value between 6,800,000 and 8,500,000

Swiss Francs (roughly equivalent to U.S. Dollars).

32.    The "Ocean Dream" was actually sold at a Christie's auction for a price of 7,781,000

Swiss Francs.

33.    Thus, the "Amount" of $22,000,000.00 listed by D&M for the "Ocean Dream" on

Memo No. 3646 approximately tripled the gem's actual, real-world value.

34.    D&M routinely listed "Amounts" for gems on Memos that were approximately 3

times the gems' actual value. Upon information and belief, this "value tripling" on

Memos was in 2013, and has remained through the present, a routine and consistent

business practice of D&M.

35.    If the "Amounts" listed on the Memos by D&M for the collateral gems were

accurate, it would mean that D&M willingly offered $40,000,000.00 worth of gems to

Essex as security for a single loan of $8,000,000.00.

36.    Upon information and belief, the gems listed in Memo No. 3610 and Memo No.

3646 and used as collateral for the First Loan were collectively worth far less than the

$40,000,000.00 in aggregate value claimed on those Memos by D&M.

37.     Memo Number 4215, issued by D&M and dated June 11, 2015, lists a total of five pieces and states that those pieces are "for collateral only against loan of $5 million" (the outstanding balance of the First Loan as of that date).

38.     Memo Number 4269, issued by D&M and dated October 20, 2015, names and describes Item JR0182—the Kashmir Sapphire at issue in the instant proceeding.

39.     Memo Number 4269 states that the Kashmir Sapphire is offered as "Collateral for loan" in connection with the First Loan.

40.     Memo Number 4277, issued by D&M and dated November 3, 2015, lists a diamond necklace provided "for collateral against loan of $8,500,000.00" and with an "Amount" claimed by D&M to be $12,500,000.00.

41.     Memo Number 4293, issued by D&M and dated November 24, 2015, lists a pair of "Harry Winston" earrings with an "Amount" claimed by D&M to be $3,500,000.00, and the Kashmir Sapphire, both provided to Essex "for collateral against loan of $8,500,000.00."

42.     Memo Number 4374, issued by D&M and dated April 21, 2016, lists a pair of diamond earrings, a diamond necklace, the Kashmir Sapphire, and a diamond ring, all provided to Essex "as collateral against loan of 9.5 million loan."

43.     Memo Number 4456, issued by D&M and dated August 2, 2016, again describes the Kashmir Sapphire, as "COLLATERAL ONLY."

44.     Memo Number 4488, issued by D&M and dated September 27, 2016, lists a pair of "Harry Winston" earrings, the Kashmir Sapphire, and Item DM2950—the Pink Diamond at issue in this proceeding—all provided to Essex "for collateral loan of $8,500,000."

45.    Memo Number 4608, issued by D&M and dated March 1, 2017, depicts a ring with a 28.59-carat Burma ruby given an "Amount" by D&M of $6,000,000.00, and a ring with a 25.33 diamond with an "Amount" claimed by D&M to be $5,000,000.00, both "for collateral only."

46.    Each of the Memos conveying a security interest for the First Loan, including Memo Nos. 3610, 3646, 4215, 4269, 4277, 4293, 4374, 4456, 4488, and 4608 (collectively, the "**First Loan Collateral Memos**") were issued on the same "Memo" form used by D&M up to and including the present, including on the Memos defined in the Amended Complaint as the "Essex Memos," and each contains the same language defined in the Amended Complaint as the "Consignment Terms":

> The merchandise described above is delivered to you on memorandum, at your risk from all hazards, regardless of the cause for the loss or damage, only for examination and inspection, upon express condition that all such merchandise shall remain the property of D&M Capital Group, LLC and shall be returned on demand, in full in its original form. Until the merchandise is returned and actually received by us, you are fully responsible therefor, and in the event of damage or loss for whatever reason, whether caused by you or another, whether or not under your control, you will indemnify us immediately by payment of the amount in the column Amount (US$) above which represents the extent of the actual loss and is not intended to constitute a price of the sale of the merchandise. You acquire no right of authority to sell, pledge, hypothecate, or otherwise dispose of the merchandise, or any part thereof by memorandum or otherwise. It being expressly understood that regardless of other transactions or prior trade customs, no credit is extended with respect to this memorandum. A sale of all or any portion of the merchandise shall occur only if and when we agree and you shall have received a separate invoice. Receipt of the merchandise constitutes your agreement to the foregoing terms which represent the entire contract with respect to the merchandise

herein described and which cannot be varied by oral statements, dealings with respect to other merchandise or any contrary customs of the trade. You consent to the personal jurisdiction of the Federal State Court in the City and State of New York in any lawsuit arising out of the consignment or any sale resulting therefrom. Any such lawsuits between us are may only be brought in one of such courts. Each of us consents to service of process by certified mail, return receipt requested.

47.     The added notations on the First Loan Collateral Memos, as well as on any other

similar Memos, that the property described therein was offered as collateral for a loan,

supersede and negate the Consignment Terms on the forms.

48.     In fact, the so-called consignment language was invariably no moment to the

nature of the parties' underlying arrangements but was meant to merely denote who had

custody of the underlying gems at the time.

49.     The added notations on the First Loan Collateral Memos, as well as on any other

similar Memos, that the property described therein was offered as collateral for a loan,

grant security interests in those gems to Essex in connection with the named loan.

50.     D&M intended and agreed to, and indeed did, grant security interests in the

collateral gems to Essex in connection with the First Loan.

51.     Essex would not have extended the requested credit to D&M for the First Loan

without adequate security for the debt, and Essex acted in reliance upon D&M's

commitment to provide sufficient collateral for the First Loan at all relevant times.

52.     On or around June 27, 2017, the balance of the First Loan was reduced to zero after

D&M provided a valuable jewelry item to Essex in satisfaction of the debt, consistent with

D&M's practice of giving Essex inventory pieces instead of money to cover its loan payments.

**Essex Provides the Second Secured Monetary Loan to D&M**

53.    Shortly after the elimination of the First Loan, Spector approached Essex and Paul in late June of 2017 and requested that Essex issue additional credit to D&M, again offering various inventory pieces as security.

54.    Essex granted Spector's request and in July 2017 extended a secured loan to D&M of the total principal amount of $5,500,000.00, which was later increased to a principal amount of $6,500,000.00 in November 2017  (the "**Second Loan**").

55.    As with the First Loan, Essex was required to again borrow a portion of the needed funds from other sources. Thus, Essex incurred its own debt in order to help D&M by furnishing the Second Loan.

56.

57.    D&M issued numerous Memos reflecting Essex's interests in collateral for the Second Loan.

58.    For example, Memo Number 4736, issued by D&M and dated July 25, 2017, shows a ring with a 28.59-carat Burma ruby, Item No. JR0250 (the same ring reflected in Memo No. 4608) given an "Amount" by D&M of $6,000,000.00, "as collateral for $5.5M Loan."

59.    The notation in Memo No. 4736 states further that the collateral is a "ring owned 100% by D&M Capital Group, LLC."

60.    Memo Number 4743, issued by D&M and dated July 27, 2017, shows the ruby ring from Memo No. 4736 (JR0250), as well as DM2950 (listed here as Item No. JR0261) — the

Pink Diamond at issue in this dispute—and states that these pieces are not only provided as "collateral for $5.5m loan," but are "100% owned by D and M CApital [*sic*] Group, LLC."

61.    In the Amended Complaint, D&M reveals its statement on Memo 4743 to have been a fraud upon Essex, as D&M now claims that it did *not* own 100% of the Pink Diamond in 2017, but rather that since 2015 the Pink Diamond has been owned in equal one-third shares by D&M, Nominal Defendant Ultimate Diamond Co. ("**Ultimate**"), and Nominal Defendant Radwan Diamond & Jewelry Trading ("**Radwan**"). *See* Am. Compl. ¶¶ 31-32.

62.    According to the Amended Complaint, D&M never owned a 100% interest in the Pink Diamond and, at most, owned a 34% interest in the item.

63.    The Amended Complaint further reveals that the Pink Diamond was purchased by D&M (and ostensibly by Ultimate and Radwan) in 2015 for $2,170,000.00, far below the inflated value of $4,500,000 ascribed to it by D&M in the Memos.

64.    Memo Number 4856, issued by D&M and dated November 22, 2017, depicts the Kashmir Sapphire and certifies the gemstone as "100% owned by D and M Capital Group LLC" and provides that the item is "collateral for loan."

65.    In the Amended Complaint, and as with the Pink Diamond, D&M reveals its statement on Memo 4856 to have been a fraud upon Essex, as D&M now claims that it did *not* own 100% of the Kashmir Sapphire in 2017, but rather that since 2014 the Kashmir Sapphire has been owned in equal one-third shares by D&M, Radwan, and Nominal Defendant S.B. Diamond Corp. ("**SB**"). *See* Am. Compl. ¶ 28.

66.    According to the Amended Complaint, D&M never owned a 100% interest in the Kashmir Sapphire and, at most, owned a 34% interest in the item.

67.    The Amended Complaint further reveals that the Kashmir Sapphire was originally purchased by D&M in 2008 for $1,850,000.00, far below the inflated value of $7,000,000.00 ascribed to it by D&M in the Memos.

68.    Memo Number 5072, issued by D&M and dated June 29, 2018, depicts the Pink Diamond and, in handwriting, notes that it is "collateral."

69.    Memo Number 5251, issued by D&M and dated February 28, 2019, describes the Pink Diamond,  the Emerald Earrings (Item No. JE0104), the Cross Pendant (Item No. JP0105), the Yellow Diamond (Item JR0280), and a platinum ring, and provides them all "for collateral against 6.5m loan."

70.    Each of the Memos purporting to convey a security interest for the First Loan, including Memo Nos. 4736, 4743, 4856, 5072, and 5251 (collectively, the "**Second Loan Collateral Memos**") were issued on the same "Memo" form used by D&M up to and including the present, including on the Memos defined in the Amended Complaint as the "Essex Memos," and each contains the same language defined in the Amended Complaint as the "Consignment Terms":

> The merchandise described above is delivered to you on memorandum, at your risk from all hazards, regardless of the cause for the loss or damage, only for examination and inspection, upon express condition that all such merchandise shall remain the property of D&M Capital Group, LLC and shall be returned on demand, in full in its original form. Until the merchandise is returned and actually received by us, you are fully responsible therefor, and in the event of damage or loss for whatever reason, whether caused by you or another,

whether or not under your control, you will indemnify us immediately by payment of the amount in the column Amount (US$) above which represents the extent of the actual loss and is not intended to constitute a price of the sale of the merchandise. You acquire no right of authority to sell, pledge, hypothecate, or otherwise dispose of the merchandise, or any part thereof by memorandum or otherwise. It being expressly understood that regardless of other transactions or prior trade customs, no credit is extended with respect to this memorandum. A sale of all or any portion of the merchandise shall occur only if and when we agree and you shall have received a separate invoice. Receipt of the merchandise constitutes your agreement to the foregoing terms which represent the entire contract with respect to the merchandise herein described and which cannot be varied by oral statements, dealings with respect to other merchandise or any contrary customs of the trade. You consent to the personal jurisdiction of the Federal State Court in the City and State of New York in any lawsuit arising out of the consignment or any sale resulting therefrom. Any such lawsuits between us are may only be brought in one of such courts. Each of us consents to service of process by certified mail, return receipt requested.

71.    The added notations on the Second Loan Collateral Memos, as well as on any other similar Memos, that the property described therein was offered as collateral for a loan, supersede and negate the Consignment Terms on the forms.

72.    The added notations on the Second Loan Collateral Memos, as well as on any other similar Memos, that the property described therein was offered as collateral for a loan, grant security interests in those gems to Essex in connection with the named loan.

73.    D&M intended and agreed to, and indeed did, grant security interests in the collateral gems, including the Precious Stones, to Essex in connection with the Second Loan.

58

74.     Essex would not have extended the requested credit to D&M for the Second Loan without adequate security for the debt, and Essex acted in reliance upon D&M's commitment to provide sufficient collateral for the Second Loan at all relevant times.

**The Amounts and Values Listed on the Memos Issued by D&M are Overinflated and Inaccurate**

75.     Upon information and belief, the "Amounts" listed by D&M in the various Memos are fictional and arbitrary, and do not reflect accurate real-world values for any of the pieces described therein.

76.     For example, in Memo No. 4856 dated November 22, 2017, D&M listed the purported value of the Kashmir Sapphire at $7,000,000.00; then in Memo Number 4899, dated January 9, 2018, the same Kashmir Sapphire is ascribed a value by D&M of just $18,000.00.

77.     Furthermore, the values listed on the Memos contradict values listed on contemporaneous Invoices also issued by D&M for the same items.

78.     For example, Memo Number 5302, dated May 17, 2019, assigns a value of $7,000,000.00 to the Kashmir Sapphire. Yet Invoice No. 12452, also issued by D&M to Essex and dated just days later on May 21, 2019, values the Kashmir Sapphire at $5,350,000.00.

79.     Similarly, D&M assigned a value of $4,500,000.00 to the Pink Diamond in Memo No. 5251 dated February 28, 2019, but Invoice 12452 lists the price for the Pink Diamond at $2,150,000.00.

80.     The purported values shown in the Memos issued by D&M are inaccurate and

arbitrary, and do not reflect the real-world value of any of the collateral, including the

Precious Stones.

**D&M Pays Down Its Debt by Giving Collateral Gems to Essex**

81.     As part of its agreements with Essex in connection with the First Loan and the

Second Loan, in addition to its promises to repay the principal of those loans, D&M

obligated itself to remit monthly payments of interest on the amount of principal debt.

82.     Not only did D&M have a long history of offering gemstones and jewelry as

collateral for its debt to Essex, but it also had a history of paying down that debt or the

monthly interest payments by transferring gemstones and jewelry to Essex.

83.     In numerous instances, D&M demanded that Essex accept inventory items in lieu

of monetary payments, because D&M claimed that it lacked funds to pay its obligations.

84.     For example, Invoice No. 12140, issued by D&M and dated June 27, 2017, shows

that Essex was given a necklace (Item No. JN0168) valued at $10,000,000.00, in exchange

for crediting D&M with an "$8 million dollar loan repayment," three months' worth of

past-due interest payments on the First Loan, and a $500,000.00 "deposit" on the Second

Loan. This was the transaction that reduced the First Loan to a balance of zero.

85.     Numerous other invoices issued by D&M between 2013 and the present note that

gems were given or sold to Essex for fair value exchanges of credits against interest

payments or principal on the First Loan or the Second Loan.

86.     Invoice No. 11429, issued by D&M and dated July 3, 2013, purports to bill Essex

$2,200,000.00 for a diamond necklace, minus a "Commission Expense" of $160,000.00,

such that the total amount Essex was invoiced for its purchase of the necklace was $2,040,000.00. The $160,000 deducted from the original price was not, in fact, a "commission," but rather a remittance by D&M of its required interest payments on the First Loan in lieu of money.

87.     Invoice No. 11435, issued by D&M and dated August 21, 2013, purports to bill Essex $300,000.00 for a set of diamond earrings. At Spector's insistence, Essex paid only $140,000.00 to D&M by check for these earrings, and the balance was satisfied by deducting D&M's interest payments on the First Loan.

88.     Invoice No. 11601, issued by D&M and dated February 11, 2015, lists a diamond ring with a sale amount of $1,150,000.00 and a "Balance Due" of $0.00 after Credits/Payments of $1,150,000.00 were applied. These "Credits/Payments" included a $500,000.00 reduction in the principal balance of the First Loan, credit for two months' interest on the First Loan, and a check given to D&M by Essex in the amount of $330,000.00.

89.     Invoice 11601 also bears a notation that "The payment of $160,000 below is for the interest payment for January 2015."

90.     Invoice No. 11945, issued by D&M and dated February 1, 2016, purports to sell D&M's 50% share in an 8.91 carat oval diamond to Essex for a price of $300,000.00, but also notes that this $300,000.00 is "paid on account of 2 months interest of loan."

91.     Invoice No. 11983, issued by D&M and dated July 19, 2016 reports the sale to Essex of a necklace and earrings for a total list price of $2,200,000.00. In reality, Essex paid D&M only approximately $1,690,000.00 for these pieces, as the rest was offset, at the demand of

Spector and D&M, by credits to Essex for several months of interest payments owed by D&M on the First Loan.

92.    Invoice No. 12090, issued by D&M and dated February 16, 2017, lists two diamonds sold to Essex for a total of $348,973.25, of which Essex only needed to submit a check for $178,973.25 because this invoice allowed for a "credit towards payment $170000.00 for interest."

93.    Similarly, Invoice No. 12116, issued by D&M and dated April 20, 2017, lists two diamonds sold to Essex for a total of $350,000.00, of which Essex actually paid only $190,000.00 because this invoice showed that a "credit of $160000.00 for March applied."

94.    Invoice No. 12327, issued by D&M and dated July 10, 2018, shows the sale to Essex of a diamond for the invoice price of $285,300.00, yet the invoice also shows that from that price was "deducted $235000.00 Jan and Feb interest" and "25000.00 towards March interest," such that the final Balance Due, and the amount actually remitted by Essex, for the diamond was $25,300.00.

95.    In all cases where a gemstone or piece of jewelry was substituted for a payment of interest or principal on the First Loan or the Second Loan, such substitution occurred at the behest or insistence of D&M and Spector.

96.    In or around 2015, Spector listed for sale an apartment that he owned personally. Spector requested of Paul that Essex take the apartment in satisfaction of the First Loan — offering Spector's personal asset to pay off the corporate debt of his company D&M. Essex declined this offer.

97.    In short, D&M and Spector had a lengthy history of using tangible property, primarily in the form of gemstones and fine jewelry, as substitutions for monetary payments on their debts to Essex.

98.    In July of 2018, D&M was several months in arrears on its monthly interest payments. D&M sent Essex a check, dated July 10, 2018, for $365,000.00 to cover the overdue amounts, but then D&M, through Spector, began discussions with Essex, through Paul, that ultimately resulted in an agreement that Essex could simply take full ownership of the Precious Gems it currently held as collateral and apply them against the ongoing debt.

99.    D&M's offer was consistent with its past practices, as it had repeatedly substituted the value of inventory pieces for monetary payments on both the First Loan and the Second Loan, and had paid off the principal of the First Loan by assigning valuable jewelry over to Essex.

100.    In acceptance of D&M's offer, Essex did not cash the check issued by D&M on July 10, 2018.

101.    D&M issued monthly payment checks to Essex on August 6, 2018, September 7, 2018, and October 1, 2018, all of which went untendered by Essex due to its new agreement with D&M to satisfy the debt with the Precious Stones.

102.    D&M issued no monetary payments of any kind on the Second Loan after October 2018, and has not actually payed any monies to Essex against the Second Loan since approximately April 2018, as reflected in the uncashed checks.

103.    No later than November 2018, the agreement between Essex and D&M became final and active and Essex assumed full ownership of the Precious Stones in satisfaction of the Second Loan (including the past-due interest payments).

104.    As of November 2018, Essex maintained physical possession and full ownership in the Precious Stones.

105.    Based upon the oral agreements made between D&M, through Spector, and Essex, Essex believed the debt to be satisfied and the ownership of the Precious Stones to rest solely with Essex.

106.    To the extent that D&M came into physical possession of some or all of the Precious Stones after November 2018, it did so on consignment from Essex, and not as an owner of any of the Preciosu Stones.

107.    Had the Second Loan not been satisfied through Essex's ownership of the Precious Stones, D&M would be in default on the Second Loan for approximately eighteen months' worth of payments as of the filing date of these Counterclaims.

108.    At all relevant times, D&M represented that it was the sole owner of a 100% interest in any gems it offered to Essex as collateral for the First Loan or the Second Loan, including the Precious Gems.

109.    At no point prior to the filing of D&M's Chapter 11 Petition was Essex made aware that D&M may not be the sole owner of any of the Precious Stones, or that other parties may have an interest therein.

110.    Based upon D&M's representations that Essex could retain ownership of the Precious Stones in satisfaction of the Second Loan, Essex willingly went without payment

of principal or interest in connection with the Second Loan from approximately April 2018 to the present.

## COUNT I

### DECLARATORY JUDGMENT THAT OWNERSHIP OF THE PRECIOUS STONES RESTS SOLELY WITH ESSEX - 28 U.S.C. §§ 2201, 2202

111.    The Counterclaim-Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

112.    Essex lent money to D&M in good faith, based upon D&M's representations that its debt was secured by collateral.

113.    As of the time that D&M stopped making payments in connection with the Second Loan in 2018, the unpaid principal balance of the Second Loan was $6,500,000.00.

114.    Essex held possession of the Precious Stones for significant lengths of time between 2015 and the present.

115.    The Memos issued by D&M reflect that the Precious Stones were offered to Essex by D&M as security on D&M's debt in connection with the Second Loan.

116.    In mid-2018, D&M offered to give Essex the collateral Precious Stones in satisfaction of the outstanding debt, and Essex accepted.

117.    From approximately April 2018 to the present, Essex has not taken in any monetary payments in connection with the Second Loan.

118.    Essex did not pursue D&M for payment on the Second Loan because it reasonably believed that the Second Loan was satisfied by its retention of ownership of the Precious Stones.

119.    For D&M to now claim in bankruptcy that Essex should return the Precious Stones as property of the estate smacks of bad faith and stands to severely prejudice and harm Essex.

120.    Courts are empowered by 28 U.S.C. Sections 2201 and 2202 to issue judicial declarations as to the rights of parties to a dispute.

121.    A declaratory judgment that Essex is the proper owner of a 100% interest in each of the Precious Stones is appropriate and necessary here to vindicate Essex's rights in the Precious Stones and avoid undue prejudice to Essex.

## COUNT II

### RESCISSION OF LOAN BASED UPON FRAUD

122.    The Counterclaim-Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

123.    This Count is pleaded in the alternative, in the event that the Declaratory Judgment sought in Count I is not issued.

124.    Essex relied upon D&M's provision of security on the debt when issuing the First Loan and the Second Loan to D&M.

125.    The security was provided by D&M through certain gemstones and fine jewelry offered as collateral, as reflected in various Memos issued by D&M.

126.    Essex would not have provided the First Loan or the Second Loan to D&M without proper security and value in the collateral offered by D&M.

127.    Essex also relied upon D&M's representations that D&M was the sole owner of a 100% interest in any and all of the items it offered as collateral on the First Loan or the Second Loan, including the Precious Stones.

128.    Essex would not have provided the First Loan or the Second Loan to D&M if it had known that D&M was not the sole owner of the items offered as collateral.

129.    The allegations in the Amended Complaint establish that D&M fraudulently misrepresented to Essex that it was the sole owner of each of the Precious Stones.

130.    D&M also fraudulently misrepresented the claimed values of the Precious Stones used as collateral.

131.    In filing the Amended Complaint, D&M also seeks to remove the security it provided for the Second Loan, meaning that D&M fraudulently misrepresented to Essex that the Precious Stones would be granted to Essex in the event that D&M defaulted on the Second Loan.

132.    Had the Second Loan not been considered satisfied through Essex's retention of ownership of the Precious Stones, D&M would have been in default on the Second Loan for approximately eighteen months as of the filing date of these Counterclaims.

133.    If the allegations in the Amended Complaint are true, then D&M defrauded Essex in connection with the First Loan and the Second Loan as to the security interests granted to Essex and as to D&M's ownership interest thereof.

134.    Because the agreements by Essex to issue the First Loan and the Second Loan were obtained only by D&M's fraud upon Essex, equity and good conscience require that the Second Loan be rescinded and that D&M assume the parties' loan agreement as an

67

administrative priority and thereby return the unpaid principal of $6,500,000.00 to Essex, along with applicable interest ahead of unsecured creditors.

135.    Similarly, because the agreement by Essex to consider the Second Loan satisfied by Essex's retention of the Precious Stones was obtained only through D&M's fraud upon Essex, equity and good conscience require that the Second Loan be rescinded and that D&M assume the parties' loan agreement as an administrative priority and return the unpaid principal of $6,500,000.00 to Essex, along with applicable interest ahead of unsecured creditors.

## COUNT III

### DECLARATORY JUDGMENT OF NON-DISCHARGEABILITY DUE TO FRAUD  - 28 U.S.C. §§ 2201, 2202 and 11 U.S.C. (a)(2)

136.    The Counterclaim-Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

137.    Pursuant to 11 U.S.C. Section 523(a)(2), a debtor is not discharged from any debt obtained through "false pretenses, a false representation, or actual fraud."

138.    D&M employed false and fraudulent representations regarding the values and ownership statuses of the collateral it offered to Essex in connection with the First Loan and the Second Loan, including the Precious Stones.

139.    Because Essex only issued the First Loan and the Second Loan to D&M in reliance upon D&M's fraudulent representations regarding the security for the debt, a judicial declaration under 28 U.S.C. Section 2201 holding that D&M's debt to Essex, in the amount of $6,500,000.00 to Essex, along with applicable interest, is not dischargeable through

D&M's Chapter 11 bankruptcy proceeding is appropriate and necessary to avoid prejudice to Essex.

## COUNT IV

### COMMON LAW INDEMNIFICATION

140.    The Counterclaim-Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

141.    Unbeknownst to Essex, the Counterclaim-Defendant pledged Precious Stones as collateral for Essex's loans which it did not truly own, whether in whole or in part.

142.    Since the initiation of this action these hitherto undisclosed parties have asserted and/ or threatened to assert claims against Essex, *see, e.g.,* *S.B. Diamond Corp. v. Essex Global Trading, Inc., and The D&M Capital Group, LLC,* Index No. 19-01332-scc (Bankr. S.D.N.Y. 2019), based upon the plaintiffs' alleged ownership interest in the underlying Precious Stones.

143.    By reason of the Counterclaim-Defendant's and Third-Party Defendant's concealment of these alleged "participants," Essex has been exposed to millions of dollars in liabilities arising from alleged competing claims of ownership being made by the participants and for which Essex might be held responsible.

144.    Accordingly, an order should issue imposing any attendant liabilities assessed against Essex to be assessed against D&M and Spector for being the cause of this prospective liability by means of fraud.

## PRAYER FOR RELIEF

WHEREFORE, the Counterclaim-Plaintiff respectfully prays that this Court enter

an order and judgment in its favor and against the Counterclaim-Defendant,

A.      Dismissing the Amended Complaint herein with prejudice;

B.      Declaring that the Precious Stones rightly, properly, and fully belong to Essex;

C.      Or, in the alternative, rescinding Essex's Second Loan to D&M and ordering D&M

to assume the parties' loan agreement as an administrative priority and return the unpaid

principal of $6,500,000.00 to Essex along with applicable interest, costs, and fees;

D.      Declaring that D&M obtained the First Loan and the Second Loan through fraud

upon Essex, and that thus any claims Essex has against D&M or its estate are not subject

to discharge through D&M's instant Chapter 11 bankruptcy proceeding;

E.       Ordering Spector and D&M to indemnify Essex and Paul against any present or

future claims asserted by other parties in connection with the Precious Stones; and

F.      Such other relief as may be just and proper.

Dated: New York, New York
       September 9, 2019

                                    Sam P. Israel P.C.


                                    By: _____

                                    Sam P. Israel (SPI0270)
                                    Timothy L. Foster (TF8896)
                                    180 Maiden Lane, 6th Floor
                                    New York, New York 10038
                                    T: (646) 787-9880; F: (646) 787-9886
                                    samisrael@spi-pc.com
                                    timfoster@spi-pc.com
                                    *Attorneys for Defendants/Counterclaim-
                                    Plaintiffs*

70

## VERIFICATION

### VERIFICATION OF ALEKS PAUL

STATE OF NEW YORK          )
                           )          ss.:
COUNTY OF NEW YORK         )


I am the principal and an officer of the Defendant/Counterclaim-Plaintiff corporation in this Action, and I hereby attest that I have reviewed the foregoing Answer, Counterclaims, and Third-Party Complaint and know the contents thereof; the same is true to my own personal knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____
ALEKS PAUL


Sworn to before me this __9__ day of September, 2019:


_____
Notary Public