```
 1                         UNITED STATES BANKRUPTCY COURT
                           SOUTHERN DISTRICT OF NEW YORK
 2     ┌─────────────────────────────────────┐
       │ In re:                               │  Lead Case No. 19-11711-scc
 3     │      THE D&M CAPITAL GROUP LLC,      │  New York, New York
       │                                      │  December 12, 2019
 4     │                            Debtor.   │  10:21 a.m. - 12:37 p.m.
       └─────────────────────────────────────┘
 5

 6                               - AGENDA -
            AP: 19-01300-SCC, THE D&M CAPITAL GROUP, LLC VS.
 7                    ESSEX GLOBAL TRADING, LLC ET AL
 8      EMERGENCY APPLICATION FOR EX PARTE RELIEF ORDER TO SHOW CAUSE
 9         WHY AN ORDER SHOULD NOT BE ENTERED GRANTING A TEMPORARY
       RESTRAINING ORDER AND RELATED RELIEF FILED BY AURORA CASSIRER
10          ON BEHALF OF THE D&M CAPITAL GROUP, LLC (DOC #32)
11              BEFORE THE HONORABLE SHELLEY C. CHAPMAN
12                   UNITED STATES BANKRUPTCY JUDGE

13     A P P E A R A N C E S :

14     For the Debtor:              AURORA CASSIRER, ESQ.
                                    BRETT GOODMAN, ESQ.
15                                  Troutman Sanders LLP
                                    875 Third Avenue
16                                  New York, New York 10022
                                    (212) 704-6000
17
       For Essex Global Trading:    SAM P. ISRAEL, ESQ.
18                                  TIMOTHY L. FOSTER, ESQ.
                                    SAM P. ISRAEL P.C.
19                                  180 Maiden Lane, 6th Floor
                                    New York, New York 10038
20                                  (646) 787-9880; (646) 787-9886 Fax
21
                                    LAWRENCE PAUL (witness)
22
       For S.B. Diamond Corp.:      SALLY SICONOLFI, ESQ.
23                                  Morrison Cohen, LLP
                                    909 Third Avenue
24                                  New York, New York 10022-4784
                                    (212) 735-8600; (212) 735-8708 fax
25
```

```
 1   A P P E A R A N C E S :

 2   For Moty Spector:          ERIC S. MEDINA, ESQ.
     (via phone)               The Chrysler Building
 3                             405 Lexington Avenue, 7th Floor
                               New York, New York 10174
 4                             (212) 404-1742; (888) 833-9534 fax

 5   Transcriber:              AA EXPRESS TRANSCRIPTS
                               195 Willoughby Avenue, Suite 1514
 6                             Brooklyn, New York 11205
                               (888) 456-9716
 7                             aaexpress@court-transcripts.net

 8         (Proceedings recorded by electronic sound recording)

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

In re D&M Capital Group LLC - 12/12/19                    52



22          Okay.   Before the Court is the application of D&M

23   Capital Group, hereinafter the plaintiff or the debtor, seeking

24   a preliminary injunction, one, enjoining and restraining (a) the

25   defendants in this adversary proceeding and (b) all persons

In re D&M Capital Group LLC - 12/12/19                    53

1   known and unknown including without limitation Mourad Equities

2   and Anna Joukova from transferring, selling, encumbering, or

3   otherwise disposing of the precious stones, as defined

4   hereinafter; and, two, directing the defendants to immediately

5   bring back four of the precious stones and place them in transit

6   from their current locations to the United States and, upon

7   their return, deposit such stones in the vault at Chase Bank

8   where Item Numbers JE0104 and JP105, two of the precious stones,

9   are currently being kept.

10          The term "precious stones" refers to the following six

11  items of jewelry: one, Item 2950, also referred to during this

12  proceeding as JR0261, a pink diamond ring; number two, Item

13  JE0104, a pair of emerald pearl and diamond earrings; three,

14  Item JP105, a cross pendant; four, Item JR0280, a yellow diamond

15  ring; five, Item JR036, a ruby ring; and item seven -- and item

16  six, Item JR0182, the Kashmir sapphire ring.

17          The debtor asserts that the six precious stones are

18  property of the estate and argues that the Court should issue a

19  preliminary injunction in order to protect the estate from

20  immediate and irreparable harm which would occur from the

21  transfer or disposition of the previous stones during the time

22  that it takes to litigate the adversary proceeding to final

23  judgment.

24          In sharp contrast, Alex Paul and Essex Global Trading,

25  LLC, the defendants in this adversary proceeding, claim that the

In re D&M Capital Group LLC - 12/12/19                54

1  precious stones were and are the property of Essex, that the

2  debtor cannot show a likelihood of success on the merits of the

3  amended complaint, and that the requested injunction is

4  unwarranted and should be denied.

5         An evidentiary hearing on the debtor's application for

6  a preliminary injunction was held before this Court on December

7  9th, 10th, and today, December 12th, 2019.  In support of its

8  application, the debtor called the following witnesses, Mr. Moty

9  Spector and Ms. Rafaella Calandria.  In support of its objection

10 to the debtor's application, Essex called the following

11 witnesses: Mr. Justin Sakmeki (phonetic), Mr. Aleks Paul, and

12 Mr. Lawrence Paul.

13        The legal standard.  Within the Second Circuit, courts

14 have applied "the traditional preliminary injunction standard as

15 modified to fit the bankruptcy context in determining whether

16 injunctive relief is warranted.  Nevada Power Company v. Calpine

17 Corporation, In re Calpine Corporation, 365 B.R. 401-409 (Bankr.

18 S.D.N.Y. 2007).  See also, In re Shatter Gay Corporation, 2001

19 B.R. 48 at 71 (Bankr. S.D.N.Y. 1996).  Both decisions, I would

20 note, rendered by the late Judge Lifland.

21        The traditional standards for seeking a preliminary

22 injunction are that the party seeking the injunction must show,

23 one, a likelihood of irreparable harm in the absence of the

24 injunction and, two, either a likelihood of success on the

25 merits or sufficiently serious questions going to the merits

In re D&M Capital Group LLC - 12/12/19                    55

1  where the balance of hardships tipping decidingly in the

2  movant's favor.  Doninger v. Niehoff, 527 F.3rd 41 at 47 (2d

3  Cir. 2008).

4         Bankruptcy courts have incorporated the following more

5  bankruptcy-specific factors in determining whether there is

6  irreparable harm and which party is likely to prevail on the

7  merits, "Whether there is a likelihood of a successful

8  reorganization; two, whether there is an imminent irreparable

9  harm to the estate in the absence of an injunction; three,

10  whether the balance of harm tips in favor of the moving party;

11  and four, whether the public interest weighs in favor of an

12  injunction."  In re Calpine Corporation, 366 B.R. 409 (Bankr.

13  S.D.N.Y. 2007).

14         Courts considering these factors have taken a flexible

15  approach with no single factor being determinative here.  The

16  Court finds that for the current purposes whether or not the

17  bankruptcy-specific standard or the more general second standard

18  applies would not make a difference in the outcome of its

19  determination.

20         Discussion.  Whether the precious stones are

21  property of the estate is a threshold issue in this matter.

22  Essex argues that the debtor cannot demonstrate that the

23  precious stones are property of the estate because the evidence

24  and the law both support a finding that the precious stones

25  belong to Essex.  The Court disagrees.  At this preliminary

In re D&M Capital Group LLC - 12/12/19                    56

1    injunction hearing, the debtor adduced documentary evidence

2    together with the testimony of the debtor's principal, Moty

3    Spector, as to five of the six precious stones sufficient to

4    create a presumption that these five precious stones are

5    property of the debtor's estate.

6              Such evidence was sufficient to support a prima facie

7    showing that the debtor either has a full or partial ownership

8    interest in each of five of such stones.  These five stones are

9    as follows: one, Item 2950, a pink diamond ring; two, Item

10   JE0104, a pair of emerald pearl and diamond earrings; three,

11   Item JP105, a cross pendant; four, Item JR0280, a yellow diamond

12   ring; and five, Item JR0182, the Kashmir sapphire ring.

13             As such, the burden shifts to Essex to demonstrate

14   that such stones are not property of the debtor's estate.  The

15   documentary and testimonial evidence adduced by Essex failed to

16   refute the debtor's prima facie showing as to these five

17   precious stones.  Regarding the sixth precious stone, Item

18   JR0306, a ruby ring, Mr. Spector confirmed in his testimony on

19   cross-examination that D&M sold 100 percent ownership in this

20   ring to SB Diamond Corporation.  According to the invoice

21   presented as Exhibit 44, it appears that D&M currently has an

22   interest in 50 percent of the profits from any future sale of

23   the ruby ring.  An interest in future profits from the future

24   sale of the ruby ring is not the same as an ownership interest.

25             Notwithstanding, the Court finds that D&M has

In re D&M Capital Group LLC - 12/12/19                    57

1   demonstrated sufficient evidence to claim a possessory interest

2   in the ruby ring as a consignee of SP Diamond Corporation.  D&M

3   (sic) consigned the ruby stone to D&M on December 4th, 2018 as

4   set forth in Exhibit 1 and such stone eventually was turned into

5   the ruby ring.  Accordingly, D&M has met its burden to establish

6   an interest in the ruby ring and Essex has not introduced

7   sufficient evidence to controvert this documentary evidence.

8           Likelihood of success on the merits.  Essex argues

9   that even if the debtor is able to establish that ownership of

10  the precious stones is in question such that the debtor has met

11  its burden of proof, the debtor cannot prove a likelihood of

12  success on the merits with respect to the causes of action

13  asserted in the amended complaint.  Accordingly, Essex maintains

14  the preliminary injunction should be denied.

15          Essex asserts that it has an enforceable and perfected

16  security interest in each of the precious stones which gives

17  Essex a, quote/unquote, superior interest in the stones that

18  will require denial of the debtor's ultimate claims for turnover

19  under Section 542 of the Bankruptcy Code.  With respect to

20  Essex's claims regarding its alleged security interest, the

21  debtor maintains that it never signed a security agreement

22  granting Essex a security interest in any of the previous stones

23  and that the consignment memos in evidence negate any alleged

24  intent to create a security interest in the precious stones.

25          Article 9 of the New York Uniform Commercial Code

In re D&M Capital Group LLC - 12/12/19                58

1  governs the validity of security interests in personal property.

2  Pursuant to Section 9-203, an enforceable security interest

3  cannot exist absent a security agreement, New York UCC Law

4  Section 9-203(b)(3).  See also, In re Adirondack Timber

5  Enterprises, Inc. No. 08-12553, 2010 WL 1741378*3 (Bankr.

6  N.D.N.Y. April 28, 2010), "Unless the grant of a security

7  interest is contained in the security agreement, there is no

8  security interest."  Citations omitted.

9          Security agreement is defined in relevant part as "an

10  agreement that creates or provides for a security interest."

11  New York UCC Section 9-102(a)(74).  Generally, a security

12  agreement must describe the collateral and be signed by the

13  debtor. Id. Section 909-203(b)(3)(A).  See also, In re

14  Lanzatella, 254 B.R. 84 (Bankr. W.D.N.Y. 2000).

15          A security interest may arise without a signed writing

16  under certain limited circumstances.  Specifically, if the

17  putative secured party obtains possession of the collateral

18  pursuant to an oral or unauthenticated security agreement, then

19  an enforceable security interest may arise without a signed

20  writing.  See New York UCC Law Section 9-203(b)(3)(B).

21          Like a common law pledge, Section 9-203(b)(3)(B) and

22  Section 9-313(a) of the UCC require intentional physical

23  delivery of the collateral by the debtor to the putative secured

24  creditor, and that party must have actual and exclusive

25  possession of the collateral for its interest to be deemed

In re D&M Capital Group LLC - 12/12/19                          59

1   enforceable and perfected.

2          Here, no written authenticated security agreement

3   between the parties that describe the collateral and was signed

4   by the debtor was admitted into evidence during the evidentiary

5   hearing.  Accordingly, Essex does not have a security interest

6   in the precious stones pursuant to Section 9-203(b)(3)(A) of the

7   Uniform Commercial Code.

8          Through the testimony of Mr. Alex Paul, Essex claims

9   that the parties had an oral security agreement and

10  understanding that the debtor would pledge the precious stones

11  to Essex as collateral for a loan and Essex would take

12  possession of the purported collateral as a secured creditor.

13  While Essex is able to demonstrate that it did have possession

14  of the precious stones from time to time, for Essex to succeed

15  with respect to its claim that a security interest arose without

16  a signed writing, it would need to demonstrate that the debtor

17  intended to create a pledge of collateral.

18         Sections 9-203(b)(3)(B) and Section 9-313(a) of the

19  Uniform Commercial Code require intentional physical delivery of

20  the collateral by the debtor to the putative secured creditor as

21  well as actual and exclusive possession of the collateral for

22  the secured -- putative secured party's interest to be deemed

23  enforceable and perfected.

24         The debtor through its principal Moty Spector

25  vehemently denies any intention to grant a security interest to

In re D&M Capital Group LLC - 12/12/19                    60

1    Essex as to any of the precious stones.  Even if the parties had

2    orally agreed on such an arrangement, the debtor points out that

3    the form memo used for the transactions by D&M includes a "no

4    oral modifications and merger clause" which provides that "the

5    seed of the merchandise constitutes your agreement to the

6    foregoing terms which represent the entire contract with respect

7    to the merchandise herein described and which cannot be varied

8    by oral statements, dealings with respect to other merchandise,

9    or any contrary customs of trade."

10           Moreover, the debtor also points out that form terms

11   of the memos from the debtor to Essex also show that D&M had no

12   intention to grant a security interest to Essex as the memos

13   state as follows: "The merchandise described above is delivered

14   to you on memorandum upon express condition that all such

15   merchandise shall remain the property of D&M Capital Group and

16   shall be returned on demand and in full in its original form.  A

17   sale of all or any portion of the merchandise shall only occur

18   if and when we agree, and you shall have received a separate

19   invoice.  Receipt of the merchandise constitutes your agreements

20   to the foregoing terms which represent the entire contract with

21   respect to the merchandise herein described and which cannot be

22   varied by oral statements, dealings with respect to other

23   merchandise, or any contrary customs of the trade."

24           The debtor asserts that because possession of the

25   previous stones was revocable, the parties could not have

In re D&M Capital Group LLC - 12/12/19                    61

1   intended to create a security interest which would require Essex

2   to have continued possession in order to retain such interest.

3   Finally, even though certain of the memos introduced into

4   evidence contain the notion collateral for a loan or similar

5   language, the debtor argues that such language fails to render

6   the memos ambiguous, and the Court need not look beyond the

7   memos themselves to determine the parties' intent.

8         Essex has failed to provide sufficient evidence to

9   support its claims that the parties had agreed to an oral

10  security agreement as to any of the precious stones as it cannot

11  demonstrate D&M's intent thereto.  Based on the testimony of Mr.

12  Spector and the full record of the evidentiary hearing, the

13  Court finds that the evidence fails to support a determination

14  that a security interest was granted to Essex by the debtor with

15  respect to any of the six precious stones.

16        Even assuming, however, arguendo that the parties had

17  entered into an oral security agreement sufficient to grant

18  Essex a valid security interest in the precious stones, the

19  debtor argues that as a legal matter, Essex failed to properly

20  foreclose on its purported security interest in the precious

21  stones and had no legally supportable right to seize the

22  precious stones as repayment for any loan.  Specifically, the

23  debtor submits that Essex failed to comply with the requirements

24  of the Uniform Commercial Code for strict foreclosure, the

25  process by which a secured party retains collateral in

In re D&M Capital Group LLC - 12/12/19                    62

1   satisfaction of the secured debt.

2            Essex responds that as an agreed payoff of the loan

3   from Essex to D&M, Essex had the right to retain the precious

4   stones which it had in holding as collateral and that it now

5   owns the stones outright.  The Uniform Commercial Code provides

6   in pertinent part and subject to certain exceptions and

7   applicable here that a secured creditor may accept collateral in

8   full or partial satisfaction of the underlying debt only if

9   among other things the debtor consents.  New York Uniform

10  Commercial Code Section 9-620(a).

11           A debtor consents to an acceptance of collateral in

12  full satisfaction of the debt it secures only if the debtor

13  agrees to the terms, agrees to the terms in a signed writing

14  after its default to the secured creditor, one, sends the debtor

15  -- or the secured creditor, one, sends the debtor after its

16  default a, quote/unquote, proposal to accept the collateral in

17  full satisfaction of the debt it secures, and two, does not

18  receive a notice of objection to the proposal authenticated by

19  the debtor within 20 days.  UCC Section 9-620(c).

20           The proposal must be in writing, signed by the secured

21  creditor, and include the terms on which the secured party is

22  willing to accept the collateral in satisfaction of the debt it

23  secures.  UCC Section 9-102.

24            The Uniform Commercial Code does not allow

25  constructive foreclosure.  Purported or apparent acceptance of

In re D&M Capital Group LLC - 12/12/19                      63

1   collateral is ineffective unless, one, the secured party

2   consents to the acceptance in a signed writing or sends a

3   proposal to the debtor and, two, the requirements of Section 9-

4   620(a) are met which include the debtor's consent.  See Uniform

5   Commercial Code Section 9-620(b).

6           Essex has failed to introduce any evidence that the

7   debtor consented to a strict foreclosure in the manner required

8   by Section 9-620 of the Uniform Commercial Code.  There was no

9   written document evidencing Mr. Spector's agreement that Essex

10  retained any of the precious stones as repayment for a loan.

11  Further, when asked during his direct testimony whether he sent

12  the debtor any written proposal stating that Essex intended to

13  keep the precious stones, Mr. Alex Paul confirmed he did not.

14  When Mr. Spector was asked during his direct testimony whether

15  he gave Essex permission to keep any of the precious stones, Mr.

16  Spector testified that he did not.

17          Mr. Paul's failure to send the debtor a written

18  proposal regarding his intended foreclosure and the absence of

19  the debtor's confirmed consent to any such foreclosure causes

20  Essex's claim that it owns the precious stones as a result of an

21  agreed foreclosure to fail as a matter of law.  A party holding

22  another party's collateral even if such collateral is held

23  pursuant to a valid security agreement cannot simply seize the

24  collateral to pay off an alleged debt without complying with all

25  provisions of applicable law.

In re D&M Capital Group LLC - 12/12/19                     64

1          As previously stated, to obtain a preliminary

2    injunction, a movant must show, A, irreparable harm and, B,

3    either, one, a likelihood of success on the merits or, two,

4    sufficiently serious questions going to the merits to make them

5    a fair ground for litigation and a balance of hardships

6    decidedly tipping toward the party requesting the preliminary

7    relief.  See Citigroup Global Markets, Inc. v. BCG Special

8    Opportunities Master Fund Limited, 598 F.3rd 30-35 (2d Cir.

9    2010).

10          The debtor has demonstrated that it is likely to

11   succeed on the merits of the adversary proceeding or at the very

12   least that sufficiently serious questions going to the merits

13   are present to make them a fair ground for litigation.  The

14   issues raised by the debtor's application for a preliminary

15   injunction are intertwined with accounts of the amended

16   complaint which, among other things, seek turnover pursuant to

17   Section 542 of the Bankruptcy Code.

18          The Court's determination that the debtor has put

19   forth a prima facie case regarding its ownership of five of the

20   six precious stones and of its interest as a consignee in the

21   sixth stone, the ruby ring, supports a finding that this prong

22   of the preliminary injunction test has been more than satisfied,

23   Maintaining the status quo through a preliminary injunction will

24   enable the parties to fully adjudicate the issues in the

25   adversary proceeding and will prevent irreparable harm to the

In re D&M Capital Group LLC - 12/12/19                65

1  debtor, which factor the Court will discuss next.

2          Irreparable harm.  The debtor argues that unless the

3  Court grants D&M's application for a preliminary injunction, the

4  debtor and its estate will be irreparably harmed.  Specifically,

5  the debtor maintains that the taking of the precious stones

6  caused the debtor to file its Chapter 11 case and any failure to

7  preserve the debtor's alleged rights to recover such stones

8  through the adversary proceeding would cause irreparable harm to

9  the estate and may push the debtor into Chapter 7 liquidation.

10         According to the debtor that the debtor ultimately

11 prevails in this litigation, there is little certainty that the

12 debtors (sic) will cooperate and return the precious stones to

13 the debtor.  In contract, Essex argues that there is no imminent

14 irreparable harm to the estate in the absence of a preliminary

15 injunction, even if the precious stones are sold by a third

16 party at the present time or during the pendency of the

17 adversary proceeding because the stones' value could be paid

18 through a, quote, simple monetary judgment in the event that the

19 debtor is ultimately successful on its claims against Essex.

20         The Court finds that the debtor has successfully

21 demonstrated that it would be irreparably harmed in the absence

22 of a preliminary injunction prohibiting the sale, transfer, or

23 disposal of the six precious stones at this time and that,

24 accordingly, a status quo should be maintained.  There is no

25 record evidence for Essex's assertion that a money judgment here

In re D&M Capital Group LLC - 12/12/19                    66

1   would be an equivalent substitute for a return of the precious

2   stones themselves should the debtor prevail in the adversary

3   proceeding.  First, Essex has not demonstrated that it would

4   have sufficient funds to satisfy any money judgment and, second,

5   as the debtor speculates, it is possible that the defendants may

6   in fact be judgment-proof.

7             Further, given the uncertainty with respect to

8   the current location, insured status, and its potential

9   disposition of certain of the precious stones, the Court finds

10  that the debtor would be irreparably harmed if a preliminary

11  injunction was not granted.

12            Conclusion.  The reasons set forth herein, the Court

13  finds that the debtor, one, has met its burden of proof to

14  demonstrate ownership in the precious stones, and, two, has

15  demonstrated a likelihood of success on the merits of the

16  adversary proceeding and irreparable harm if the preliminary

17  injunction is not granted.  Accordingly, the debtor's

18  application for a preliminary injunction is granted as to the

19  six precious stones.

20            The Court orders the immediate return of Item 2950, a

21  pink diamond ring; two, Item JR0280, a yellow diamond ring;

22  three, Item JR036, a ruby ring; and four, Item JR0182, the

23  Kashmir sapphire ring to the United States and shall require

24  that such stones be properly insured by Essex during transit and

25  that proof of insurance be provided to the debtor.  It is the

In re D&M Capital Group LLC - 12/12/19                    67

1  Court's understanding that Item Numbers JE0104 and JP105 are

2  currently being held in a vault at Chase Bank under the control

3  of Mr. Israel, counsel to Essex.

4          The Court orders that all six of the previous stones,

5  including the two current stones currently held at Chase Bank

6  and the four stones that are to be returned to the United

7  States, shall be transferred to the custody, control of counsel

8  to the debtor.  Counsel to the debtor is directed to hold such

9  stones in a secure vault until further order of this Court.  The

10 parties are directed to submit an order consist with this bench

11 decision.

12         Okay.  That concludes the ruling.  ████████████

78

1                              CERTIFICATION

2

3          I, Rochelle V. Grant, certify that the foregoing is a

4   correct transcript from the official electronic sound recording

5   of the proceedings in the above-entitled matter.

6   Dated:   December 17, 2019

7

8

9   _____
                       Signature of Approved Transcriber

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25