MEDINA LAW FIRM LLC
641 Lexington Avenue
Thirteenth Floor
New York, NY 10022
Telephone: (212) 404-1742
Facsimile: (888) 833-9534
*Attorneys for Third-Party Defendant Moty Spector*

------------------------------------------------------------------X

In re:

THE D&M CAPITAL GROUP, LLC,

                              Debtor.

Chapter 11

Case No. 19-11711(SCC)

------------------------------------------------------------------X

THE D&M CAPITAL GROUP, LLC,

                              Plaintiff,

-against-

ESSEX GLOBAL TRADING, LLC, ALEKS PAUL, and "JOHN DOES," said names being fictitious and unknown,

                              Defendants,

-and-

RADWAN DIAMOND & JEWELLERY TRADING, ULTIMATE DIAMOND CO., S.B. DIAMOND CORP., PALAWAN HOLDINGS LIMITED, and GEMCUT S.A.,

                              Nominal Defendants.

Adv. Pro. No. 19-01300 (SCC)

------------------------------------------------------------------X

ESSEX GLOBAL TRADING, INC.

                              Third-Party Plaintiff,

-against-

MOTY SPECTOR,

                              Third-Party Defendant.

------------------------------------------------------------------X

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTY SPECTOR'S MOTION TO DISMISS DEFENDANT ESSEX GLOBAL TRADING, INC.'S THIRD PARTY COMPLAINT**

{00081184 }

**INTRODUCTION**

Third Party Defendant Moty Spector ("Mr. Spector" or "Defendant") by and through his undersigned counsel submits his Reply Memorandum in further support of his Motion[1] in response to the objection filed by Essex in opposition to the Motion.

**PRELIMINARY STATEMENT**

Essex's response to the Motion does little more than recount tales of "first loans" and "second loans" all in an effort to establish a course of dealing with respect to the interpretation of the Essex Memos, without actually identifying, what if any part of the Essex Memo's is ambiguous. Essex's opposition does not address its failure to overcome the fact that its claims in the TPC are both duplicative of its contract claims against D&M and that well-settled New York law bars common law indemnity claims of the likes asserted by Essex, as such those arguments are not repeated here. For the reasons that follow, the Motion should be granted.

**I.  ESSEX CANNOT MAINTAIN CLAIMS AGAINST SPECTOR THAT ARE TIME BARRED**

The parties does not dispute that the Essex Memos are the only written documents concerning the Precious Stones between D&M and Essex. Nevertheless, Essex asserts throughout its opposition to the Motion that "[*a*]*ll* of the Collateral memos dating back to 2012 contain fraudulent statements" and "all of the Collateral Memos are relevant to the claims against Spector, and all are "operative" with respect to the allegations in the TPC, not just the latest documents involving the six Precious Stones." *See* Essex Br. at 18 (*emphasis in original*). Essex's clarification thus makes clear that the claims in the TPC pursue fraud claims against Spector dating back to the year 2012-these claims are clearly time-barred by the statute of

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed in Mr. Spector's opening Memorandum in Support of Motion to Dismiss [Doc. No. 73] filed January 11, 2020.

{00081184 }                                                   2

limitations. *See* CPLR 213(8) (imposing a six year statute of limitations). These claims must accordingly fail.

## II. ESSEX'S THEORY OF LIABILITY CONTRADICTS THE PLAIN LANGUAGE OF THE INTEGRATED ESSEX MEMOS

Essex's fraud theory contradicts the plain language of the Essex Memos pursuant to which Essex obtained possession of the Precious Stones. Essex does not dispute that it came into possession of the Precious Stones by way of the Essex Memos. Indeed, Essex does not dispute that the Essex Memos are the operative and relevant documents necessary for the Court's adjudication of the ownership of the Precious Stones. Instead, Essex's claims in the TPC and throughout this litigation have attempted to posit that a course of conduct between D&M and Essex contradict the plain language of the Essex Memos.[2] This novel approach however departs from well-settled law requiring that Essex plead factual allegations that state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009. Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950. A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. Meeting the plausibility standard requires a complaint to plead facts that show "more than a sheer possibility that a defendant has acted unlawfully" here Essex has failed to do so in light of the existence of the plain language of the Essex Memos *Id*. (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

---

[2] The opposition states "Ultimately, consistent with a pattern of conduct long established between Spector and Mr. Paul (86-101) D&M through Spector, agreed that Essex could take ownership of the Precious Stones, which happened to be the pieces then being held by Essex as collateral against the Second Loan, and apply them against D&M's debt. TPC 102, 107. Acting in good-faith reliance on this agreement, Essex considered the debt satisfied and stopped pursuing recover [sic] against D&M and assigned the Precious Stones to Essex's creditors in payment of Essex's own debt. TPC 109-110.

Again, the Essex Memos each provide:

> **Receipt of the merchandise constitutes your agreement to the foregoing terms which represent the entire contract with respect to the merchandise herein described and which cannot be varied by oral statements, dealings with respect to other merchandise or any contrary customs of the trade**.

*See* Essex Memos. Where, the contract contains a specific disclaimer denying reliance on the very representation that underlies the fraud claim, the plaintiff cannot argue that he relied on the representation when he signed it. *See Citibank, N.A. v. Plapinger,* 485 N.E.2d 974, 976 (N.Y.1985) (upholding "boilerplate" language that imposed a personal guaranty upon signatories relaying in part on the fact that the parties were business persons in sophisticated transaction)see also *Danann Realty Corp. v. Harris,* 157 N.E.2d 597, 599–600 (N.Y.1959); *see generally* Contracts § 9–21, at 371. Even in the absence of a specific disclaimer, a fraudulent inducement claim will still be barred whenever "an express provision in a written contract contradicts the claimed representations in a meaningful fashion." *See Bango v. Naughton,* 584 N.Y.S.2d 942, 944 (N.Y.App.Div.1992 (2d Cir.1993). Here however, the Essex Memos contain express language contradicting Essex's theory of a course of dealing or custom which negate the plain language of the agreement between sophisticated business persons. Under these circumstances it is respectfully submitted no reasonable inference can be drawn that Mr. Spector is liable for fraud.

## CONCLUSION

**WHEREFORE**, Mr. Spector respectfully requests that this Court grant his Motion in all respects and grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
May 12, 2020

Respectfully submitted,

{00081184 } 4

By: */s/ Eric S. Medina*
Eric S. Medina, Esq.
MEDINA LAW FIRM LLC
641 Lexington Avenue
Thirteenth Floor
New York, NY 10022
Tel. (212) 404-1742
Fax (888) 833-9534
*Attorneys for Third Party Defendant Moty Spector*